PESTEL MILK COMPANY, Plaintiff-Appellant v. MODEL DAIRY PRODUCTS COMPANY et, Defendants-Appellees.

Ohio Appeals, Second District, Franklin County.

No. 3510.   Decided January 27, 1943.

Binns & Tresemer, Columbus, for plaintiff-appellant.
R. W. Poppleton, Columbus, and D. F. Smith, Columbus, for defendants-appellees.

## OPINION

By GEIGER, P. J.

This is an appeal on questions of law from a decision of the Court of Common Pleas of Franklin county which, after having heard the issues and having stated in writing its conclusions of fact separate from conclusions of law, ordered that the restraining order granted in said cause be dissolved, and that the petition and supplemental petition be dismissed.

Notice of appeal was given on questions of law.

We will state the issues as briefly as possible. The pleadings are numerous and voluminous.

The plaintiff, a partnership, is, and has been engaged for ten years in the business of buying and distributing and dealing in milk and its products in the city of Columbus.

Defendant, Model Dairy Products Company, is a corporation and a competitor of the plaintiff in the milk business.

On September 30, 1940, plaintiff, for a valuable consideration, purchased the assets of the Corbin Brothers Milk Company, including all contracts with route men of the said Corbin Company, a partnership. Said company had been engaged in the milk business in the city of Columbus for more than a quarter of a century and had built up and established a valuable business and patronage, which constituted the main consideration for the purchase by plaintiff, and to preserve which the plaintiff has continued to operate, with Corbin Brothers as a separate branch.

The defendant, Carl E. Burns, had been in the employ of the Corbin Company for many years, as route salesman, and the defendant, Cloyd M. Dillon, has been in the employ of said Corbin Company for several years, as a route salesman, in consequence of which defendants, Burns and Dillon, acquired an intimate and confidential knowledge of the trade practices and good will of the customers, lists of which were kept in books belonging to the said Corbin Company. At the time of the purchase by the plaintiff, defendants Burns and Dillon were employed by the Corbin Company as route salesmen and each had agreed, in writing, not to engage in any way in any kind of dairy product business or employment, for himself or any one else, without said company's written permission, nor to solicit any of the customers or patronage of said Corbin Brothers while employed by said company or for six months thereafter, and further agreed not to give to others the names of customers served by him for said Corbin Milk Company while employed by said company or six months thereafter. It is alleged that said defendants Burns and Dillon, together with other route salesmen of the Corbin Company continued in the employ of the plaintiff, The Pestel Milk Company, in the same confidential capacities in serving the same routes which they had previously served for the Corbin Company until March 31, 1941, when the defendants Burns and Dillon, despite

previous assurances by each to the plaintiff to the contrary, failed to report for duty, failed to take out and operate their routes and entered the employ of the defendant. The Model Dairy Products Company, and have since continued to serve plaintiff's customers on the said routes with milk and products of the Model Dairy Products Company.

It is alleged that the Model Dairy Products Company and its officers. following the purchase by plaintiff of the business of the Corbin Company, with the purpose and intention of unlawfully appropriating the good will purchased by plaintiff, began systematically to solicit Burns and Dillon and other employees of plaintiff operating said Corbin branch route, to leave the employ of the plaintiff, and to divert its customers to the defendant, The Model Dairy Products Company, offering to pay them an increase in salary. It is alleged that defendants, Burns and Dillon, while in the confidential employ of the plaintiff, together with other named defendants, employees of the Model Dairy Company, conspired to divert to that company the customers of the Corbin Milk Company purchased by plaintiff, and in furtherance of said conspiracy, said Burns and Dillon, while yet in the confidential employment of the plaintiff, did solicit the customers on their said routes to go with them to the Model Dairy Company, and did falsely represent to the customers that said Corbin Brothers Milk Company was no longer in operation, and that Burns and Dillon in furtherance of the conspiracy by disrupting the operation by the plaintiff of the Corbin Brothers Milk route did falsely represent and promise to the plaintiff, as late as March 29, 1941, that they had no intention of leaving its employ and that they would report for work Monday morning, March 31, 1941. In furtherance of said conspiracy to accomplish the purpose, on March 31, 1941, defendants, Burns and Dillon failed to report for duty or to operate the routes and entered the employment of the Model Dairy Company and by use of confidential knowledge have diverted many of said customers to the Model Dairy Company; to the damage of the plaintiff in the sum of $10,000.00, for which recovery is asked, and plaintiffs pray that the Model Dairy Company and certain other defendants be enjoined from directly or indirectly employing Burns and Dillon; that Burns and Dillon be enjoined from soliciting customers for the Model Company and from adversely influencing any of the customers of the plaintiff and from using confidential information, and that a temporary restraining order be issued.

Later a supplemental petition was filed, alleging that certain officers of the Model Dairy Company, following the purchase by the plaintiff of the good will of the Corbin Company, with the intention of unfairly and unlawfully appropriating the entire good will and business purchased by the plaintiff, began systematically to contact and solicit Burns and Dillon and all the other employees of the plaintiff operating said Corbin Brothers branch routes to leave the

employ of the plaintiff and to divert its patronage and good will to the defendant, The Model Dairy Products Company, offering to pay them an increase in salary.

Plaintiff makes certain other allegations touching the conduct of various individuals whom it charges with the purpose of diverting to the Model Dairy Company diverting to the Model Dairy Company the business and customers belonging to the plaintiff and to the Corbin Company at the time it purchased the business and property of said Corbin Company. It prays judgment against the Model Dairy Company and certain named individuals in the sum of $10,000.00, as prayed in the original petition, and for the further sum of $5000.00 and for restraining orders.

The Model Dairy Company, together with certain of its officers, filed an amended answer, admitting certain formal matters; that on or about March 31, 1941, the defendants, Burns and Dillon, entered into the employ of the Model Dairy Products Company. They deny all other allegations.

Burns and Dillon filed an amended joint answer in which they admit certain formal matters; that they were formerly employed by the Corbin Milk Company, and that they each signed a route salesmen agreement with the Corbin Milk Company, and that they worked for that company and the Pestel Milk Company, but deny all other allegations.

As a first defense they allege that they refused to sign an employment agreement or route salesmenship agreement with the Pestel Milk Company; that they were employed by the plaintiff on a week to week basis only, and that they had a right to quit their employment at any time, and work for any competitor of the plaintiff; that they did quit the employment of the plaintiff and entered the employment of the Model Dairy Products Company.

As as second defense they say that Corbin Brothers Milk Company and The Pestel Milk Company did not consult with them and that they did not consent to the assignment of their route salesmen contracts from Corbin Brothers Milk Company to the plaintiff; that at all times they have refused to permit the assignment of their route agreements from the Corbin Brothers to the Pestel Milk Company.

The cause was submitted to the court without the intervention of a jury, and a request made by the plaintiff that the court state in writing its conclusions of fact, separately from the conclusions of law. This the court did, stating 22 separate conclusions of fact, and six separate conclusions of law.

Many of the conclusions of fact support the undisputed allegations of the pleadings and need not be stated at length, except so far as they may definitely affect the issues.

Finding of fact No. 9 is to the effect that neither Burns nor Dillon assented to the proposed sale of their employment contract by Corbin Brothers Milk Company to the Pestel Milk Company.

No. 10, that from and after September 30, 1940, and until March 31, 1941, a period of six months, said Burns and Dillon continued to work for the Pestel Milk Company as route men, covering the same routes formerly worked by them when covered by the Corbin Brothers Milk Company.

No. 11, that during the six months period of employment of Burns and Dillon by said Pestel Milk Company, that company repeatedly requested them to sign written employment contracts with the plaintiff in the form shown by Defendant's Exhibits Nos. 1 and 2, which were the contracts made by them with the Corbin Company, which contained restrictive covenants against employment by competitors, but that Burns and Dillon refused to sign said contracts

No. 12, that neither during the employment of said Burns and Dillon by Pestel Milk Company, nor at any other time was there any ratification or adoption by Burns or Dillon of the separate contracts entered into between them and Corbin Brothers Milk Company, and no novation with respect thereto.

No. 13, that the employment of both by the Pestel Company was indefinite as to the terms of duration of their service.

No. 14, that on March 31st, said Burns and Dillon discontinued their employment with Pestel Milk Company and took employment with the Model Dairy Products Company in the same capacity as route men and salesmen and from said date and thereafter proceeded to solicit customers theretofore served by them while they were employees of the Pestel Milk Company.

No. 15, that the Model Dairy Products Company, at the time it employed Burns and Dillon, had no knowledge of any contractual relations between these two and the Pestel Milk Company, but on the contrary had been informed that they were not bound by any contract by the Pestel Milk Company.

No. 17, that it is not shown by a preponderance of the evidence that any illegal conspiracy at any time existed by or among any of the defendants.

No. 18, that it was not shown by a preponderance of the evidence that the defendant Burns solicited customers of the Pestel Milk Company for the Model Dairy Products Company, prior to the date of his employment by the Model Dairy Products Company.

No. 19, that it is not shown that the defendant Burns copied any of the list of Corbin Brothers Milk Company or of the Pestel Milk Company at any time.

No. 20, that Dillon, on or about the day before the beginning of his employment with the Model Dairy Company, copied or caused to be copied some names, (how many the court is unable to ascertain from the evidence) of the Pestel Milk Company customers.

No. 21, that it is shown by a preponderance of the evidence that the defendant Dillon solicited a few, (the exact number being unascertainable by the court) of the customers of the Pestel Milk Company for the Model Dairy Products Company, prior to his em-

ployment by it; that it is not shown by a preponderance of the evidence that said solicitation was within the knowledge of the said company or any of the defendants.

No. 22, that the defendants Burns and Dillon, by reason of daily service of their routes for a long period of time, of customers of the Pestel Milk Company, became familiar with the names and addresses of said customers so served and were able to and did carry in their minds substantially all of such names and addresses independently of any written customers' list.

The court, as conclusions of law, found:

(a) That on March 31, 1941, Burns and Dillon were each within their respective rights in accepting employment with the Model Dairy Products Company, and that said company and its officers were within their legal rights in hiring Burns and Dillon.

(b) That after accepting said employment on March 31, 1941, Burns and Dillon were within their legal rights in soliciting and selling milk on behalf of their new employer to those persons who had previously been their customers while they were employees of the Corbin Brothers Milk Company and the Pestel Milk Company. .

(c) That the evidence as to damages as between loss suffered by reason of legal acts and illegal acts on the part of any defendant is not available.

(d) That the evidence as to damages or loss to plaintiff is not severable as between the several defendants.

(e) That there is no evidence from which damages can be allocated or ascertained as against defendant Dillon, by reason of his wrong acts in copying the customers' list and soliciting customers of the Pestel Milk Company for the Model Company before he became its employee.

(f) That the temporary restraining order heretofore entered should be dissolved, and that the petition and all the amendments and supplements thereto should be dismissed.

A motion was made for judgment by the plaintiff, which was overruled, as was a motion for a new trial.

Final judgment was rendered as heretofore indicated, and the cause appealed to this court.

## ASSIGNMENT OF ERRORS.

Plaintiff-appellant assigns as errors the following, grouping the same under four separate paragraphs:

(1) The court's separate findings of fact from 8 to 22 are contrary to the evidence.

(2) The court's separate conclusions of law are each contrary to law.

(3) The court erred in the admission of defendants' Exhibits 1 and 2, and in the rejection of the plaintiff's Exhibit M.

(4) The decision of the court is contrary to the evidence and to law, and the court erred in finding for defendants and in not finding for plaintiffs.

Counsel for appellant have submitted very skilfully constructed briefs in which they separately examine and criticize the separate findings of the court from 8 to 22, inclusive, giving extracts from the testimony offered in reference to each finding of fact from which the argument is made, that there was error on the part of the court in making said separate findings of fact.

We have carefully examined the appellant's criticism of the court's finding and examined the detailed testimony as shown by the bill of exceptions touching said claimed errors.

Counsel's objections to the finding of the court on the separate finding of facts are disclosed in his original brief from pages 7 to 43. It is manifestly impossible to set out in this opinion our conclusions in reference to each of these in detail, as it would unduly lengthen this opinion.

One of the most important subdivisions of counsel's brief is his analysis of the case of **Curry v. Marquart, 133 Oh St 77,** counsel's discussion, being found at page 35 of his opening brief. The syllabus of this case is:

"In the absence of an express contract not to engage in a competitive pursuit, an employee upon making a new engagement in a competing business, may solicit for his employer the trade or business of his former customers and will not be enjoined from so doing at the instance of his former employer where there is no disclosure or use of trade secrets or confidential information relative to a trade or business in which he had been engaged and which he had secured in the course of his employment."

Matthias; J., delivering the opinion of the court, states that the services to be performed by the defendants, (the owners of the collecting truck) were not unique or extraordinary personal services, or such as to require special knowledge.

The judge further states that there was no contract between the parties attempting to control the business activities of the defendant subsequent to the termination of their service with the plaintiff.

It is further stated that the authorities are uniform that disclosure of the secrets by an employee secured by him in the course of a confidential employment will be restrained, but the court points out that in that case the record discloses that there was no confidential list of customers or other information of a confidential character, nor was there any fraud or misrepresentation to procure customers. The defendants made full disclosure of the change of relationship to their customers. The case involves no question of trade secrets or confidential information.

As before stated, appellant's counsel strenuously asserts that this case does not control the case at bar. Under the agreement of September 30, 1940, it was provided between the owners of the

Corbin Brothers Dairy, party of the first part, and Pestel Company, party of the second part, and others doing business as the Pestel Milk Company, that the first party agrees to sell all of the real property constituting the plant of Corbin Brothers, also all of the personal property consisting of plant, equipment, machinery, supplies and trucks and all other personal property belonging to said party of the first part (Corbin Brothers Dairy), and accounts receivable, etc. This agreement does not include certain personal property, "but does include all contracts and agreements made by the party of the first part and their route men." The consideration named was $18,000.00. The bill of sale describes the personal property and enumerates as part of the schedule, "and all contracts and agreements entered into by Corbin Brothers Milk Company and their route men and any other employee".

Plaintiff's Exhibits D and E cover the separate contracts of Burns and Dillon as route salesmen with the Corbin Brothers Milk Company. While the contracts are separate, they are identical in terms and contain the provision, "and I agree not to engage in any way in any kind of Dairy Product business or employment for myself or any one except the Company, without the Company's written permission, nor to solicit, divert or take away directly or indirectly any of the customers, business or patronage of the Company while employed by the Company or six months thereafter, in the territory covered by me for the Company, provided, however, that this restriction, so far as it applies to the period following the termination of my employment shall be limited in area to the particular routes covered by me as route salesman for the Company during the six months immediately preceding the termination of my employment, and I further agree not to give out, directly or indirectly the names of customers served by me for the Company while employed by the Company, or six months thereafter."

Exhibit M is an employer's contract between the Model Dairy Products Company and its employees. It provides, among other things, "Said employee understands that in the course of said employment he will acquire knowledge and the good will of the employer's customers, and therefore promises, that he will not, during employment, or for a period of twelve months thereafter, in any manner, either directly or indirectly, for, through or by himself or any other person, firm or corporation, sell or deliver or attempt to sell or deliver in the territory covered by him under the employment, any products of the same or similar kind handled by the employer," * * * or in any other manner solicit or attempt to adversely influence any of the customers or the good will of the employer.

This contract exhibited as that solicited by the Model Dairy Company was not signed by either Burns or Dillon, but the Model Company sought frequently to have them enter into such contract.

The paramount question is whether Burns and Dillon by virtue of their agreement with the Corbin Company and the alleged sale by that company to the Pestel Company of such contract could be enjoined from the activities which are testified to in reference to their attempt to secure customers for the Model Dairy Company, from those with whom they did business, during the period that they were employed by the Corbin Company under the signed contact, and whether or not Burns and Dillon, and the Model Company were guilty of a tort, for which the plaintiff could recover damages. We are inclined to the view that under the ruling of the court in the Curry case, that the Corbin Brothers Milk Company could not, by a bill of sale, transfer to the Pestel Company an effective contract with Burns and Dillon not to solicit as customers, after the expiration of six months, while employed by the Corbin Milk Company, those whom they had served as route men. The agreement was with Corbin Company and could not be assigned without the agreement of Burns and Dillon. In the contract, Exhibit A, between the Pestel Milk Company and Corbin, the contract does include all contracts and agreements made by the Corbin Company and their route men, and the bill of sale described as the personal property conveyed "all contracts and agreements entered into by Corbin Brothers Milk Company and their route men or any other employee."

Burns and Dillon entered into an agreement with the Corbin Brothers Company to refrain from soliciting business for a period of six months, but they did not agree or acquiesce in the action of Corbin Brothers Milk Company in attempting to transfer that contract to Pestel Milk Company. The fact that the Pestel Company frequently solicited these two route men to enter into a contract with it similar to that which they had entered into with the Corbin Company is indicative of the fact that the plaintiff in this case understood that it could not acquire the right to restrict the solicitation of customers while the route men were employed by it, without a definite agreement with them. Aside from this, the limitation related to a period of six months after the termination of the contract between the Corbin Brothers Company and Burns and Dillon. It would seem that Burns and Dillon refrained from any solicitation for a period of six months after the sale by Corbin Brothers Company to the Pestel Milk Company of the property of the Corbin Company. It is apparent that these two parties were under the impression that if they refrained from any activity for six months after they had left the employment of the Corbin Company and entered into that of the Pestel Company, that there were no restrictions upon them by virtue of any of the contracts, limiting their right to solicit. We are inclined to the opinion that in this they were correct. They apparently observed the terms of the Cor-

bin contract until the full expiration of six months, except for the fact, not clearly established, that Dillon did make a copy of at least some of the 174 customers that he had been serving while working for the Corbin Company, and whom he continued to serve during the six months that he worked for the Pestel Company. It becomes our duty to examine the record to ascertain whether there was any binding agreement between these two route men and the other defendants which prevented the route men from proceeding as they did after the expiration of the six months from the termination of their contract with the Corbin Company, or whether the evidence in this case renders the Model Company liable to the plaintiff for damages that may have been suffered by reason of any action it took to promote, or encourage the activities of Burns and Dillon.

We have examined the testimony in detail, and while we agree with counsel that in some cases the court might have been justified in making a different finding of facts than that which it announced, yet we can not persuade ourselves that taking into consideration the fact that the court is sitting as a jury there was such a misinterpretation of the facts as would justify us in setting aside any of the findings especially made, and we shall, therefore, overrule the alleged assignment of errors, asserting that the court's separate findings from 8 to 22 are in whole or in part contrary to the evidence. If they are contrary to the evidence to a slight extent, it is not sufficient to reverse the finding of the court in the final action dismissing the plaintiff's petition.

Assignment of error No. 2, in which it is asserted that the court's separate conclusions of law and each of them, are contrary to law is discussed on page 35 et seq. of counsel's brief. Counsel takes up seriatim each of the several findings of law and discusses at length his view of the case of Curry v Marquart, supra. We are quite frank to say that counsel has presented many impressive arguments as to why the plaintiff in this case should be protected against the marauding and piratical actions of its former employees, Burns and Dillon, in attempting to disrupt its business through the confidential information they each received while acting in the capacity of a route man for both Corbin Brothers Company and later the Pestel Milk Company, the plaintiff in this case.

We are quite in sympathy with counsel's view that a business should not be attacked and destroyed or lessened in value by the act of former employees using confidential information to accomplish the purpose of either injuring their employer's business or diverting a part of it to their new employers. We are not in sympathy with one business firm seeking to promote its own interest by soliciting aid from a former employee of its rival, to acquire an unfair advantage.

However, there are certain rules which must be considered. In the first place, it is questionable as to whether the information acquired by the two employees was, in its nature, confidential in the

sense used in the decisions denying the right of a former employee from using for the benefit of a succeeding employer confidential information. It is true that there is some evidence that Dillon copied some of the names of the customers of the plaintiff before he finally left their employment, but as a general proposition the activities of these two men could not, in our judgment, be classified as confidential. They simply delivered milk over a route to the customers of the plaintiff. There is scarcely a business in which there is competition, where one does not seek to acquire information or even the services of former employees so as to promote one's business, probably at the expense of his rival.

In the case at bar there seems to have been no disguise or secrecy about the fact that these two men had entered into an agreement to refrain from solicitation of customers of their employer, only for the period during which they were employed, or for six months thereafter.

It seems to us that plaintiff neglected the warning that was constantly before it, which should have advised it that these two employees, which it took over when it purchased the Corbin business, were alert to get new customers by which they could capitalize the knowledge which they had of the business of the plaintiff, acquired when they were employees of the Corbin Company.

Beside the Curry case we might cite other Ohio cases which in our judgment have to do with principles which control in this case.

In **Chapin v Longworth, 31 Oh St 421,** it is held:

1. "An executory contract for personal services to be paid for as performed cannot be assigned by the employer, unless the employee assents to the substitution of the assignee as employer."

This principle, we think, is applicable to the position occupied by the two route men after they had been taken over by the plaintiff in this case.

A case which we wish especially to call to the attention of counsel is **Horth v American Aggregates Corporation, 31 Abs 331,** opinion by Barnes, J. Syllabus No. 1, holds,

"It is not a malicious inducement of a breach of contract for a person to enter into an agreement with another person with knowledge that such other person has a contract with a third person covering the same subject matter and that both contracts can not be performed."

Applying that syllabus to the case at bar, it is to the effect that it is not a malicious inducement of a breach of contract for the

Model Company to enter into an agreement with Burns and Dillon with knowledge that Burns and Dillon had a contract with the Pestel Company covering the same milk routes and with knowledge that both contracts can not be performed.

Barnes, J., delivering the opinon, after stating at length the facts involved, quotes certain principles on page 337, et seq:

"Persons not bound by contract are not liable for damages for its breach on ground that they aided or abetted party in its violation."

"Persons not bound by a contract are not liable for damages on its breach although they have aided or abetted the party in its violation."

On page 338, the judge quotes from Boysen v Thorne, 33 Pac. 492:

"An action will not lie against one who maliciously, but without threats, violence, fraud, falsehood or benefit to himself, procures a breach of contract between others."

He also quotes from Schonwald v Ragains, 122 Pac. 203. This case by Judge Barnes in addition to being one of this Circuit, is so well considered that we refrain from further quotations, but commend it to a careful reading.

**Weinberg et v Schaller, 34 Oh Ap 464,** oponion by Cushing, J., relates to an alleged conspiracy between the seller of a bakery route and persons operating a bakery, to injure business of the purchaser by producing breach of contract, and while not directly pertinent to the case at bar it is near enough in its facts to engage attention.

Counsel for appellees have filed a strong reply brief in which many cases are cited and quoted from that are pertinent to the issue, but which we refrain from examining in detail due to the fact that this opinion is already overlong.

After having given full consideration to the issues presented by the pleadings, the evidence and argument of counsel, together with the opinion of the court below, we arrive at the conclusion that the court did not err in any of the particulars alleged by appellant. Assignments of errors 2, 3 and 4 will be denied.

Judgment affirmed.

BARNES and HORNBECK, JJ., concur.

## ON APPLICATION FOR REHEARING

No. 3510.   Decided March 4, 1943.

Binns & Tresemer, Columbus, for plaintiff-appellant.
Ray W. Poppleton, Columbus, for defendants-appellees.

By GEIGER, J.

This matter comes before us upon an application of the plaintiff-appellant, The Pestel Milk Company, for a rehearing of our decision rendered January 27, 1943, for the reason alleged that it is contrary to the decision of the Supreme Court in **Briggs v Butler, 140 Oh St 499,** decided December 16, 1942, and for the further reason that it is in conflict with the decision of the Court of Appeals of the First Judicial District in the case of **French Brothers Bauer Company v Townsend Brothers Milk Company, 21 Oh Ap 177, 152 N. E. 675.**

Our decision is largely based upon the decision of the Supreme Court in **Curry, Appellant, v Marquart, Appellee, 133 Oh St 77.**

In the case at bar the two individuals whose activities in soliciting the customers of the plaintiff are sought to be restrained, are not now and never were the employees of the plaintiff and had no contract with the plaintiff. Burns and Dillon were employed over a long course of years by The Corbin Brothers Milk Company, which, on September 30, 1940, sold its assets, including all contracts with the route men, to the plaintiff. The plaintiff then sought a contract with these two individuals, into which they refused to enter. Their contract with the Corbin Brothers Milk Company as route salesmen was not to engage in any way in any kind of dairy product business or employment, for themselves or any one else, without said company's written permission, nor to solicit any of the customers of said Corbin Brothers while employed by said company, or for six months thereafter, and further not to give to any others the names of the customers served by either, for the Corbin Brothers Milk Company, while employed by said company or six months thereafter.

The allegation in the petition is that Burns and Dillon, salesmen of the Corbin Company, continued in the employ of The Pestel Milk Company in the same confidential capacity in serving the same route which they had previously served for The Corbin Company, until March 31, 1941, when they, despite the previous assurances to the contrary, failed to continue their operations for the Pestel Milk Company and entered the employ of The Model Dairy Products Company where they have since continued to serve plaintiff's customers with milk produced by the Model Dairy Products Company.

An injunction is asked against this activity on the part of these two individuals, formerly the employees of The Corbin Brothers Milk

Company, but never employees of the plaintiff under a restrictive contract.

In Curry v Marquart, supra, it is held that in the **absence of an express contract** not to engage in a competitive pursuit, an employee in taking new employment may solicit for his new employer the trade of his former customers and will not be enjoined from so doing at the instance of his former employer where there is no disclosure or use of trade secrets of confidential information.

We held that there were no trade secrets nor confidential communications except a possible copy of a list of a few customers of the Pestel Milk Company shortly before these two individuals severed their relations with said company. We then held that the evidence in reference to taking the names of such customers was not definite. Our decision was rendered on the 27th day of January, 1943. On December 16, 1942, the Supreme Court announced its opinion in the case of **Briggs v Wagon Service Company, 140 Oh St 499.** This opinion was announced shortly before our opinion was written and we were familiar with the holdings in that case. We have no difficulty in differentiating the Briggs case from the case at bar in that it related exclusively to a **contract** between an employer and employee, whereby the latter agrees that subsequent to the termination of such employment she would not engage in a competitive business. The court holds that a contract between the employer and employee may not unreasonably restrict the activities of the employee subsequent to the termination of the employment. Where the contract involved is one of personal service and the restrictive provision thereof relates to some kind of similar business, such contract is not unreasonably restrictive. In carefully reading this case we find that it is based entirely upon the violation of a **contract** or agreement between the plaintiff and the defendant, and the court points out this situation and holds (p. 511):

"For the reasons indicated we are of the opinion that under the facts disclosed by the record the restrictive covenants of the **contract** entered into by and between the plaintiff and defendant do not impose a restraint beyond that reasonably required for the protection of the employer in his business, that such provisions are not unreasonably restrictive upon the rights of the employee. * * *"

The court holds that the conclusions reached are in no wise inconsistent with the results reached in * * * involving the purchase and sale of interests in business or "in **Curry v Marquart, 133 Oh St 77,** which involved an employment contract containing no restrictive covenants whatever."

We therefore arrive at the conclusion that there is a clear distinction between the case at bar and Briggs v Butler.

It is urged that our decision is in conflict with that of **French Bauer Company v Milk Co., 21 Oh Ap 177.**

"This action is for injunction on the. ground of unfair competition",

and the court held that the plaintiffs were entitled to an injunction. The case at bar is not one of unfair competition and is one permitted under .the decision of **Curry v Marquart, 133 Oh St 77.**

We therefore hold that our decision is not in conflict with the French Bauer case, and we deny the application for a certificate of conflict with this case, to the Supreme Court.

Application for rehearing and certificate of conflict denied.

BARNES, P. J., and HORNBECK, J., concur.

## ADDENDA

No. 3510.   Decided March 23, 1943.

Binns & Tresemer, Columbus, for plaintiff-appellant.
Ray W. Poppleton, Columbus, for defendants-appellees.

BY THE COURT:
It has been called to our attention that in the judgment of counsel for the plaintiff-appellant that there is an inaccuracy in the statement of the court made at the bottom of page 1 and the top of page 2, where the court states:

"In the case at bar the two individuals' whose activities in soliciting the customers of the plaintiff are sought to be restrained, are not now and never were the employees of the plaintiff and had no contract with the plaintiff."

Counsel urge that this statement of the court is not correct, inasmuch as these two individuals were in the employment of the appellant after its purchase of the Corbin Brothers Milk Company. We think that the matter is cleared by the statement at the top of page 3:

"An injunction is asked against this activity upon the part of these two individuals, formerly the employees of the Corbin Brothers Milk Company but never employees of the plaintiff **under a restrictive contract.**"

It seems to us quite plain that the proper interpretation of the decision is to the effect that the statement made by the court has reference to a restrictive contract such as existed between the two individuals and the Corbin Brothers Milk Company.  Their employment by the appellant after the purchase of the assets of the Corbin

Company did not carry with it any of the restrictions embodied in the Corbin Contract with the two individuals.

BARNES, P. J., HORNBECK and GEIGER, JJ., concur.