## SAFIER'S INC. v. BIALER.

Common Pleas Court, Cuyahoga County.

No. 614391.   Decided June 20, 1950.

Harry J. Dworkin, Cleveland, for plaintiff.
Joseph L. Newman, Cleveland, for defendant.

### OPINION

By BLYTHIN, J.

For about three years prior to May, 1950, the defendant Jack P. Bialer was a salesman for A. D. Goodman-Golden Company, a corporation. The company was engaged in a general cigarette, tobacco and candy jobbing business, and it was defendant's duty to make weekly or periodical calls on 95 of his employer's customers. He operated under an employment contract which, among other things, provided that in the event that he left the company's employ he would not engage in the same line of business directly or indirectly as a salesman in Cuyahoga County for a period of one year thereafter, if such involved customers of the employer.

About the first of May, 1950, the A. D. Goodman-Golden Company entered upon negotiations looking to the sale of all of its assets. It is clear that this became known or was made

known to the defendant. He, the defendant, concerned himself about his own welfare to the extent of entering into a new employment agreement, in writing, (Plaintiff's Exhibit 1) with his employer, which agreement is dated May 8, 1950, and was probably signed on May 9th. This agreement does not appear to be substantially different from the one under which the parties had amicably and successfully operated in the past. It was perhaps a little more formal and verbose than the former and original agreement, and it is claimed that it was negotiated and entered into, at least in part, for the protection of defendant Bialer in case of a sale being consummated; in other words, Bialer was then thinking of his employment situation and the possible danger to it involved in a possible sale of the business of his employer. Whatever may have have been in the minds of the parties at the time it seems quite clear that Bialer voluntarily entered into the agreement and then knew that one of the changes embodied in it from the original agreement was that it—the new—was between A. D. Goodman-Golden Company **"their successors and assigns"** while the original contract was purely personal and contained no reference to "successors or assigns." The agreement contained these covenants:

"(6) That said Employee will not directly or indirectly either as principal, agent, employee or in any other capacity, for the term of one year after any termination of said employment, enter or engage in any branch of the cigarette, cigar, tobacco or candy business which involves any customer of said Employer with whom said Employee has at any time had any dealings on behalf of said Employer under this contract."

"(7) That said Employee hereby consents that an order, either temporary or permanent, may be made in any suit in equity brought for the purpose of enjoining him from violating any of the provisions of this agreement or any other action at law which by advice of counsel said Employer may take to enforce his rights under this contract."

It is not clamed that these are unreasonable nor that they would not be clearly enforceable between the original employer and the employee.

The employer A. D. Goodman-Golden Company, sold all its assets and business to Safier's, Inc., a corporation, and such sale is evidenced by a written contract between the parties, (Plaintiff's Exhibit 2) dated May 10, 1950, which contract included the following:

"7. Seller agrees to assign to the Buyer all contracts of employment held by Seller with certain of its employees; Seller also agrees not to employ those indicated herein and Buyer agrees to retain them on terms indicated in contracts of employment referred herein. Such employees are Jack Bialer, Otto Broz, and Jack Epstein."

The employment contract with Bialer was transferred by assignment thereon as follows, and delivery thereof was made to the purchaser of the business, Safier's Inc.

"May 10, 1950. Pursuant to a contract of sale entered into this date between ourselves and Safier's, Inc., we hereby assign the forgoing contract between ourselves and one Jack Bialer to said Safier's, Inc.

(Signed)

A. D. Goodman-Golden Company

By: George Golden, Vice President, /s/"

It is not claimed that defendant Jack Bialer or his services could be bought or sold in the market without his consent and we are not here concerned with that question. The real issue is that of whether or not a restrictive covenant of the kind mentioned is an asset of a business transferrable with such business and enforceable by the new owner.

The transfer took effect between the 10th and 15th days of May. It is undisputed that Bialer, defendant herein, visited the new owner on May 13 (Saturday) and that he was informed that such owner would welcome his continuance in the employment on the basis of his written agreement with the previous owner. There was no term of employment prescribed in the agreement of employment. Either party could terminate it at any time. The record discloses that Bialer, on May 13, said to Safier's, Inc., that he would continue and would be on the job Monday morning (May 15). Preparatory to action he selected or took some sample or give-away materials from the stock of Safier's, Inc. After leaving the place of business on Saturday, May 13, and before Monday, May 15, rolled around, Bialer changed his mind and ended his employment. He immediately proceeded to solicit the customers of his former employer, A. D. Goodman-Golden Company, on behalf of a new employer engaged in the same and identical line of business, and is still doing so.

It is claimed by plaintiff, in the second cause of action of its petition, that the A. D. Goodman-Golden Company had a collective bargaining contract with the Commission House

Drivers and Employees Union, Local 400, A. F. L., and that such contract covered its salesmen and that such contract was also assigned by the A. D. Goodman-Golden Company to Safier's, Inc., as a part of the transaction of sale and purchase of the business. It is alleged that said collective bargaining agreement (Plaintiff's Exhibit 3) contained, among others, the following provision:

"13. Any member discharged or leaving the employment of the employer is not to solicit or sell the products formerly sold by him, directly or indirectly, to the customers served by him for a period of one year."

There was no evidence that Bialer was actually a member of the Union mentioned. The court, due to its finding on the first issue does not deem it necessary to pass upon the second. A finding for plaintiff on it would not entitled it to any additional relief in any event.

Based upon the above, and bearing in mind that it is conceded that the restrictive covenant is reasonable and would be enforceable by A. D. Goodman-Golden Company against Bialer if he had voluntarily left its employment, we are called upon to answer one or two simple but very sharp questions:

(1) Is a restrictive covenant of the kind here in issue, when for the benefit of successors and assigns, an asset of the employer in its business, and one which may be effectively transferred by it as a part of a sale of all its assets?

(2) Assuming the answer to our first question to be in the negative, would acceptance or continuation by the employee of employment under the new owner change the situation, and, if so, did Bialer accept such employment?

Seeking answer to our first question we find no difficulty in holding that the "good will" of a business is a very valuable asset. That "good will" is reflected in good customers and, indeed, those customers can very well be the sum and substance of a very valuable business. The right to sell as a part of a business the "good will" developed over a period of years cannot be questioned and that "good will" must in a case such as this include the trade built up over the years with particular tradesmen. Having those tradesmen as customers and having at its own risk and expense furnished to Bialer as a paid employee free access to them and association with them, it must follow that A. D. Goodman-Golden Company had a perfect right to protect that "good will" under reasonable conditions and for a reasonable period of time against a raid by Jack Bialer, and, as between the Com-

pany and Jack Bialer the good will, under the conditions stated, was the **property** of the company to the extent that it could contractually be protected. While it is not necessary to so decide in this case, the court is inclined to the belief that such "good will" would be transferrable as a property right even though the contract of employment had not contained words or a provision extending its benefits to "successors and assigns." The restrictive covenant is directed to a period after the employment has ceased and is protective of a relationship between a tradesman and his customers or "trade" as such customers are usually designated. Reason, common sense and fair dealing dictate that one who, as an employee, has dealt for his employer with his employer's customers, can properly contract to grant to the employer a reasonable limit of protection in those customers as a "good will" asset. The court has no difficulty whatever in concluding that the restrictive covenant is a transferrable asset where, as in this case, the benefits are to the employer, "its successors and assigns" and that, in the instant case, the employment contract was properly sold and assigned. That the employment ceased by the voluntary act of Bialer, and he then acting within his rights, does not vitiate the restrictive covenant but, on the contrary, gives it life.

Coming to our second question, the court cannot escape the conclusion that Bialer, after an agreeable conference with the new owner of the business—Safier's, Inc.,—agreed to continue with his employment under the contract. Bialer was a perfectly frank witness. Safier testified that Bialer said, on Saturday, that he would be on the job Monday morning. He admitted having "changed his mind." If he accepted employment, even though he did not function, he cannot equitably change his mind and promptly proceed to raid the "good will" customers of his former employer in violation of his solemn contractual obligation to refrain from so doing.

Able counsel have invited the attention of the court to authorities which they believe contain germs of the answer to the questions to be decided in this cause, but the court is unable to find within them any comfort for the simple reason that the issue before us was not even present nor decided by the courts in those cases. The court will pass them by a mere reference to them in the order in which they were mentioned on trial.

Thomas-Bonner Co. v. Hooven, et al., etc., 284 Fed. Rep. 377. This case dealt with the assignability of a personal service contract without the consent of both parties. It is not helpful here because the instant case involves only the ques-

tion of the enforceability of a "restrictive covenant" as distinguished from an attempt to compel one to work against his will.

**Lucas et al., v. Gross Motor Car Co., 32 Oh Ap 183.** This case holds that "personal contracts" are those in which personality of one of the parties is involved. The contract in issue was held "not" to be a "personal contract" and therefore was assignable. Only the issue of whether the contract was one for personal service was involved and no "restrictive covenant" problem was present.

**Pestel Milk Co. v. Model Dairy, 39 Abs 197.** (Ohio Appeals 2nd District, 1943.)

"Syl. 3. An executory contract for personal services to be paid for as performed cannot be assigned by the employer, unless the employee assents to the substitution of the assignee as employer."

This case comes rather close to the issue involved in the case at bar. Employees had a contract with a restrictive covenant extending for six months beyond the termination of employment. The employer sold the business and assigned the contract. The employees continued in employ of new owner for the six months period but refused to enter into a new contract with it to the same effect as the contract with former employer. Held: That having observed the covenant for the six months period in the original agreement, the employees could not be further held. Putting the matter in reverse, it furnishes a powerful suggestion that if they had not observed the restrictive covenant for six months they would be enjoined.

**Chapin v. Longworth, 31 Oh St, 421.** Again we have purely a question of an executory contract for personal services. No question of "restrictive covenant" such as the one in issue in the instant case is involved.

*      *      *      *

The court, after devoting some time to search for answer to the issue in the instant case, believes that it is not to be found in any reported case in our own state as pointedly as it is in cases in other jurisdictions. The court is satisfied that the following cases decide the issue, and correctly.

**National Linen Service Corp. v. Clower, 179 Ga. 136.** (July, 1934)

Syl. 1. "A restrictive covenant whereby an employee agrees that he will not engage in a competitive business either for

himself or in behalf of another after the termination of his contract of employment is, if valid, assignable with the business of his employer; and the more especially is this true where the contract embracing such restrictive covenant contains a stipulation that its provisions shall extend to the successors and assigns of the employer."

The above case is on all fours with the case at bar with the exception that Clower continued for a period of time in the employ of the new owner of the business. The court said—Page 142:

"In the instant case we are not concerned with any effort to assign the employee's agreement to work for the employing corporation. It is only the restrictive covenant whereby the employee agreed not to engage in the same line of business, and not to work for any other person engaged in such business for the period of one year within a stipulated territory, that calls for any adjudication in the present case. This agreement, if valid, was assignable."

The court further—Page 146—dwells upon the distinction between seeking to deny an employee the right to violate his contract for personal services and seeking to deny him the right to breach a restrictive covenant ancillary to the contract of employment.

The Supreme Court of Georgia re-affirmed its holding in the third syllabus of Nelson v. Woods, et al., 205 Ga. 295, (1948).

Blaser v. Linen Service Corp. of Texas, 135 S. W. Reporter, 509. (Court of Civil Appeals of Texas. Dallas, 1939.)

Syl. 3. "A valid restrictive covenant whereby employee agreed not to compete with employer engaged in towel and linen supply business for one year following termination of employment was assignable, where employment contract embracing covenant stipulated that privileges and benefits of contract should extend to successors and assigns of employer."

The Texas court followed and approved the reasoning of the Supreme Court of Georgia in 179 Ga. 136, supra, and said— Page 511:

"We are of the opinion that the trial court did not err in its conclusion that the privileges and benefits of the negative covenant, not to engage in competing business, were assignable, enforceable by injunction. We are not concerned here

with any effort to assign an employee's agreement to work for the employing company, or its assigns, against an employee's will. It is only the restrictive covenant whereby the employee expressly agreed that 'the privileges and benefits' of the contract may be assigned, that calls for adjudication in this case. The agreement of defendant to be bound by any assignment of the contract gives rise to the power of plaintiff's predecessor to assign and clothes the assignee with all privileges and benefits of the employment agreement."

Torrington Creamery, Inc., v. Davenport, 12 Atl. Rep. (2) 780. (Supreme Ct. of Errors of Connecticut, 126 Conn. 515. (1940).

Syl. 7. "Where an employee enters into contract continuing covenant restricting activities of employee after termination of his employment, the covenant becomes a valuable asset of the business and upon sale of that business the benefits of the covenant may be assigned to the purchaser."

Syl. 8. "Where an employee enters into contract containing covenant restricting activities of employee after termination of his employment and proprietor of business sells it in its entirety to another, in equity the seller will be deemed to have assigned so much of the benefit of the contract as is severable and necessary for the protection of the business sold to the purchaser."

Syl. 9. "Where employee entered into contract containing covenant restricting activities of employee after termination of his employment and employer sold business in its entirety, the purchaser could have brought action for enforcement of the covenant in its own name or in name of selling employer, and under such circumstances either was a proper party plaintiff."

The courts, in the above cases, Georgia, Texas and Connecticut deal so clearly, and at length, with the principle here involved as to leave one with little or no doubt about the rights of the parties in the instant case.

While this court finds it unnecessary to pass upon the enforceability of the collective bargaining contract provisions, and restrictive covenant in it contained, pleaded in the Second Cause of Action of the petition in this cause, he deems it of interest to refer to the case of Western Maryland Dairy, Inc., v. Chenowith, et al., 23 Atl. Rep. (2) 660 (Court of Appeals of Maryland, 1942) and to cases therein cited and referred to.

The court holds that the contract involved in the case at bar was assignable for the protection of the employer under the restrictive covenant provision and that it would have been so assignable for that limited purpose even though it had not been made for the benefit of the "successors and assigns" of the original employer. The court further finds that Bialer accepted employment with the assignee of the business and contract, and that such acceptance, even though no work was actually performed under it, effected a novation, whether such a novation was necessary to the right to enforce the restrictive covenant or not. On the basis of what has been stated, an order will be entered herein enjoining the defendant, Jack P. Bialer, from violating paragraph 6 of his contract as recited in the first cause of action of the petition herein, such injunction to continue in effect for one year from May 13, 1950. No evidence sufficient to support the allegations of the second cause of action having been adduced the same will be dismissed. Exceptions will be noted.