The **IMPERIAL HOME DECOR GROUP (US) LLSC,**
Plaintiff,

v.

John W. **MURRAY,** Defendant.

No. 1:99 CV 2199.

United States District Court, N.D. Ohio, Eastern Division.

Oct. 5, 1999.

R. Jeffrey Pollock, Jeffrey Blaine Keiper, McDonald, Hopkins, Burke & Haber, Cleveland, OH, for plaintiff.

Maynard A. Buck, III, Ann E. Knuth, Elizabeth S. Rudnick, Benesch, Friedlander, Coplan & Aronoff, Cleveland, OH, for defendant.

*MEMORANDUM OF OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER*

WELLS, District Judge.

This matter is before the Court on the motion of plaintiff, Imperial Home Decor Group (US) LLC ("IHDG") for a temporary restraining order ("TRO") against one of its former employees, defendant John W. Murray ("Murray"). The motion was initially filed in the Court of Common Pleas of Cuyahoga County, Ohio, contemporaneously with a verified complaint against Murray seeking a preliminary and then a permanent injunction, both compensatory and punitive damages, attorneys fees, and other relief. Both documents were filed there on 14 September 1999. At the same time plaintiff, in Common Pleas Court, initiated expedited discovery, appointment of a special process server and a commission to take depositions duces tecum in Tennessee of defendant Murray's current employer.

On 16 September 1999, two days after the above described filings, defendant Murray filed in this Court a petition to remove this action under Title 28, United States Code, Section 1441. The statutory ground for removal was diversity of citizenship under 28 U.S.C. § 1332(a). The amount in controversy was asserted to exceed $75,000, exclusive of interest and costs.

On 21 September 1999, this Court held an evidentiary hearing on plaintiff's motion for a TRO. Testimony was offered by responsible officers of plaintiff and by defendant. Both parties have submitted briefs supported by affidavits and relevant documents and agreed to a limited joint stipulation of facts.

## FACTS

On 22 May 1997, defendant Murray was employed as a regional sales manager for Imperial Wallcoverings, Inc. ("Imperial"). He had been so employed for about 15 years as salesman or sales manager. On that date, he was told by Imperial, at the threat of losing his job if he did not agree, to sign a non-competition agreement ("agreement"). He agreed and signed.

The agreement contains a covenant by Murray not to compete with Imperial for a year in the business of manufacturing or selling wallcoverings within the United States, directly or as an employee of any entity so engaged. It also contains a covenant not to solicit for two years any customer of Imperial to do business with any entity so engaged or to otherwise terminate his or her association with Imperial. The agreement described Murray's employment as at will with either party free to terminate. Another clause entitles Imperial to injunctive relief, damages, attorney's fees and enforcement costs. There is also a severability clause if any court finds any provision unenforceable and a governing law clause selecting Ohio for the applicable law and the forum as either the Court of Common Pleas of Cuyahoga County, Ohio or this Court. The agreement has no "successor and assigns" provision.

After signing the agreement Murray continued as regional sales manager for Imperial for ten months.

In March 1998 Imperial was combined with a hitherto unrelated entity called Borden Decorative Products and a new corporate entity created called IHDG, plaintiff here. The present record contains conflicting testimony regarding the effect of these transactions on defendant Murray's employment.

The parties have stipulated that: Murray was required to interview for a position at IHDG; that when selected, he was told he would serve as a regional sales manager but his territory was reduced; that he was never asked to sign an assign-ment of the agreement; and that his new employer was IHDG.

Murray claims that his new position was "significantly different" from his position at Imperial in that his responsibility over sales persons was reduced, his fringe benefits altered, and he had to take on more responsibilities for the additional product line that Border Decorative Products brought into the merged company.

Murray resigned from IHDG effective 20 August 1999 and became a regional sales director for Seabrook Wallcoverings, Inc.

Plaintiff, in its brief, contends defendant's compensation, fringe benefits, work location, sales region, customer contacts and supervisor remained the same. Plaintiff also contends defendant has specialized knowledge of IHDG's customer accounts and their prospects.

Defendant denied that he has any "secret" knowledge that is not also known to the sales representatives (who did not sign non-competition agreements) and to the trade. Murray testified that at the time he was interviewed for employment by IHDG all applicants were told that "it was a total green field approach and that everyone was starting from square one." He said that customers' identity and volume of purchases are well-known to other wallcovering distributors and that customers routinely share various companies' pricing in order to bargain for the lowest prices.

## JURISDICTION

Defendant's brief argues that this Court lacks *in personam* jurisdiction because defendant, as a non-resident, did not have the required minimum contacts with Ohio under *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and the forum selection clause was not freely bargained for by defendant. Hence, it contends, the rule in Ohio that forum selection clauses in commercial contracts will be enforced does not apply. *See*

*Kennecorp v. Country Club Hosp.*, 66 Ohio St.3d 173, 610 N.E.2d 987 (1993).

Defendant, however, availed himself of this Court's removal jurisdiction under 28 U.S.C. § 1441 and its original diversity jurisdiction under 28 U.S.C. § 1332(a). Moreover, he has not, as yet, separately moved to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure. Thus, it is arguable that Murray may be estopped to deny this court's jurisdiction. *See Insurance Corp. v. Compagnie des Bauxites*, 456 U.S. 694, 703–04, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). The jurisdictional issue was neither argued nor pressed at the hearing on 21 September 1999 and on the present state of the record need not be decided now.

### THE APPLICABLE LAW

When deciding whether to grant a motion for a temporary restraining order, "a district court is to review factors such as the party's likelihood of success on the merits and the threat of irreparable injury." *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226–27 (6th Cir. 1996). The proponents must establish this by clear and convincing evidence. *Ohio Urology, Inc. v. Poll*, 72 Ohio App.3d 446, 594 N.E.2d 1027 (1991).

In this case, the likelihood of success depends on (a) the enforceability of the agreement and (b) whether the agreement could be assigned to and enforced by plaintiff IHDG since that entity was not a party to it.

Considering first the assignability of the agreement, court opinions are mixed. The intent of the parties may control. *See Pestel Milk Co. v. Model Dairy Products Co.*, 52 N.E.2d 651, 39 Ohio Law Abs. 197 (App.1943) (no assignment without employee's assent); *Safier's, Inc. v. Bialer*, 93 N.E.2d 734, 58 Ohio Law Abs. 292 (C.P.1950) ("successors and assigns" provision in agreement). The assignability of the employment contract here raises issues of whether the structure of the business changed and whether the nature of the employee's work after his assignment

changed, issues disputed by the parties. Murray was required to re-interview for a position with the new entity; his sales territory was reduced and he took on extra duties. At this state of the record, IHDG's right to enforce Murray's contract of employment with Imperial has not been established by IHDG with clear and convincing evidence.

The same conclusion is reached as to enforceability of the non-compete and non-solicitation clauses at issue. The most frequently cited Ohio case on enforceability is *Raimonde v. Van Vlerah*, 42 Ohio St.2d 21, 325 N.E.2d 544 (1975).

Among the factors properly to be considered are:

- the absence or presence of limitations as to time and space;
- whether the employee represents the sole contact with the customer;
- whether the employee is possessed with confidential information or trade secrets;
- whether the covenant seeks to eliminate competition which would be unfair to the employer or merely seeks to eliminate ordinary competition;
- whether the covenant seeks to stifle the inherent skill and experience of the employee;
- whether the benefit to the employer is disproportional to the detriment to the employee;
- whether the covenant operates as a bar to the employee's sole means of support;
- whether the employee's talent which the employer seeks to suppress was actually developed during the period of employment; and
- whether the forbidden employment is merely incidental to the main employment.

*Id.* at 25, 325 N.E.2d 544.

If the proofs demonstrate that the restrictions are, in whole or in part unreasonable, the court must balance such

factors as those set forth above with protection of what it finds to be legitimate interests of the employer. A court then "may enforce a non-compete agreement to the extent necessary to protect an employer's legitimate interests." *Id.* at 28, 325 N.E.2d 544.

Grounded in an analysis of reasonableness, *Raimonde* assigns to the trial court the responsibility to "modify or amend employment agreements" on a case-by-case basis. The enunciated principles of such analysis are that a restrictive covenant be "no greater than is required for the protection of the employer;" that the agreement not "impose undue hardship on the employee;" and that it not be "injurious to the public." *Id.* at 26, 325 N.E.2d 544.

At the hearing on 21 September, conflicting testimony was offered on a number of the factors described in *Raimonde,* including: the defendant's relations with customers; alleged confidential and secret information possessed by defendant; insider pricing information; the nature of competition in the wallpaper market; and the effect of a restraint on defendant. Moreover, plaintiff has failed to demonstrate irreparable injury.

Under these circumstances plaintiff has not established the requirements for issuance of a temporary restraining order. Therefore, plaintiff's motion for a TRO is denied.

IT IS SO ORDERED.