ARTROMICK INTERNATIONAL, INC., Appellant,

v.

KOCH, Appellee.

[Cite as *Artromick Internatl., Inc. v. Koch* (2001), 143 Ohio App.3d 805.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 00AP–406.

Decided Jan. 11, 2001.

*Vorys, Sater, Seymour & Pease, LLP,* and *W. Evan Price II,* for appellant.
*Carlile, Patchen & Murphy, LLP,* and *Michael H. Igoe,* for appellee.

LAZARUS, Judge.

Plaintiff-appellant, Artromick International, Inc., appeals the March 14, 2000 judgment entry of the Franklin County Court of Common Pleas granting summary judgment to defendant-appellee, George Koch. In this action, appellant seeks to enforce a confidentiality and noncompetition agreement entered into between Koch and Koch's previous employer, Drustar Inc. ("Drustar"), which assigned its rights in the confidentiality and noncompetition agreement to appellant. For the reasons that follow, we reverse and remand.

From October 1987 until January 25, 1999, appellee was employed by Drustar as a sales representative. As part of his employment, appellee entered into a confidentiality and noncompetition agreement with Drustar. According to the agreement, appellee promised to keep certain information obtained through his employment confidential and agreed that he would not compete (as owner or employee) against Drustar for a period of one year after termination with the company for any reason. The agreement contained no provision governing the assignability of any of its provisions.

On January 28, 1999, three days after appellee's resignation, appellant entered into an asset purchase agreement with Drustar in which appellant acquired all the assets of Drustar, including its rights under the confidentiality and noncompetition agreement with appellee. On March 3, 1999, appellant filed the instant action in the Franklin County Court of Common Pleas alleging that appellee was violating the confidentiality and noncompetition agreement, and seeking enforcement of the agreement and damages.

On February 15, 2000, the trial court filed a decision granting appellee summary judgment as to all claims, ruling that appellant (as assignee of the agreement) could not enforce the agreement. In so doing, the trial court held (1) that noncompetition agreements generally cannot be assigned under Ohio law absent the specific agreement of the employee; (2) that the agreement between appellee and Drustar contained no provision for its assignability and appellee did not otherwise consent to its assignment; and (3) that the Ohio Supreme Court decision in *Rogers v. Runfola & Associates, Inc.* (1991), 57 Ohio St.3d 5, 565

N.E.2d 540, which allowed the assignment of a covenant not to compete under certain circumstances, was factually distinguishable.

On March 14, 2000, the trial court entered judgment accordingly. It is from this judgment entry that appellant appeals, raising the following single assignment of error:

"The trial court erred in holding that appellee George Koch's confidentiality and noncompetition agreement could not be assigned to appellant Artromick International, Inc., and erred in granting appellee George Koch's motion for summary judgment on that basis."

In its single assignment of error, appellant contends that the trial court erred in granting summary judgment for appellee. In particular, appellant contends that the confidentiality and noncompetition agreement was properly assignable under Ohio law and that the trial court erred in holding that appellant could not enforce the agreement against appellee.

Civ.R. 56(C) states that summary judgment shall be rendered forthwith if:

"* * * [T]he pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * *"

Accordingly, summary judgment is appropriate only where (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 629, 605 N.E.2d 936, 942–943, citing *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 65–66, 8 O.O.3d 73, 73–74, 375 N.E.2d 46, 46–47. Appellate review of summary judgment is *de novo. Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265, 271–272; *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.* (1988), 42 Ohio App.3d 6, 8, 536 N.E.2d 411, 413–414.

As to the specific issue of whether covenants not to compete may be assigned, there is considerable disagreement among the jurisdictions of this nation. See, generally, Annotation, Enforceability, by Purchaser or Successor of Business, of Covenant Not to Compete Entered Into by Predecessor and Its Employees (1993), 12 A.L.R.5th 847. Some courts, taking a very restrictive view, prohibit assignment as a matter of law or allow assignment only if assignability is specifically approved by the employee, either in the agreement itself or by subsequent agreement with the successor business entity. See *id.* at Sections

5(a), 6(b), and 9(b). Other courts are more liberal and generally allow assignment of noncompetition agreements absent specific language in the agreement prohibiting assignment. See *id.* at Sections 9(a) and 14.

Ohio case law on the subject, while sparse, appears to take a less restrictive approach—allowing assignment of covenants not to compete without specific provisions for their assignability. In *Safier's, Inc. v. Bialer* (1950), 42 O.O. 209, 93 N.E.2d 734, 58 Ohio Law Abs. 292, a case somewhat analogous to that at issue here, the court held that an employee's covenant not to compete was assignable to the successor/purchaser of the original employer's business and that such assignment would have been valid even if the agreement had not contained (as it did) language that it was made for the benefit of the successors and assigns of the original employer. In *Safier's, Inc.*, the employee, a salesman, entered into an agreement with his employer not to compete for a period of one year after he left the employment of the company. Thereafter, the employer sold all of its assets to another company, Safier's Inc., and assigned its rights under the noncompetition agreement with the employee. While originally agreeing to work for the new owner, the employee changed his mind and never worked for the successor/purchaser of the business. Rather, the employee immediately began to solicit the customers of the original employer on behalf of a new, third-party employer. Finding that the covenant not to compete was essential to the protection of the "good will" of the company sold to the purchaser, the court enjoined the employee for a one-year period from the time he left his employ with his original employer. As stated by the court, "the contract involved in the case at bar was assignable for the protection of the employer under the restrictive covenant provision and that it would have been so assignable for that limited purpose even though it had not been made for the benefit of the 'successors and assigns' of the original employer." *Id.* 42 O.O. at 213, 93 N.E.2d at 739, 58 Ohio Law Abs. at 300.

More recently, Ohio courts have not required specific language approving assignability in the original noncompetition agreement even in cases involving the more difficult question of whether the assignment of a covenant not to compete entered into with an original employer becomes a part of (*i.e.,* becomes a condition of) the employee's subsequent employment with the successor employer and, therefore, is triggered when the employee leaves the employment of the successor employer. For example, in *Rogers,* the Ohio Supreme Court allowed a successor employer to enforce covenants not to compete that the employees had entered into with the predecessor employer even though the covenant was silent as to its assignability. Specifically, the employees had entered into the covenants not to compete with their employer, then a sole proprietorship, in the mid–1970s in which the employees agreed not to compete for a period of two years after their termination. In 1977, the employer incorporated the business and assigned

all of the assets and liabilities of the sole proprietorship, including its rights under the covenants not to compete, to the corporation. No subsequent agreement was entered into between the employees and the corporation, but the employees continued to be employed by the corporation until their resignation in 1988. When the employer sought to enforce the covenants not to compete, the Ohio Supreme Court upheld the validity of their assignment to the corporation and affirmed the employer's ability to enforce those covenants at the time of the employees resignation in 1988. *Id.* at 7, 565 N.E.2d at 542–543. In so doing, the court emphasized that only the structure of the business changed (from a sole proprietorship to a corporation) and that no additional burdens were placed on the employee as a result of the incorporation. *Id.*

In other similar cases, other Ohio courts have upheld the assignment of covenants not to compete absent specific approval of such assignability by the employee. See, *e.g., Beta LaserMike, Inc. v. Swinchatt* (Mar. 10, 2000), Montgomery App. No. 18059, unreported, 2000 WL 262628 (purporting to apply both Massachusetts and Ohio law and holding that trial court erred in concluding that a covenant not to compete was not assignable simply because the agreement lacked language suggesting that it was assignable); *C.A. Litzler Co., Inc. v. Libby* (Aug. 12, 1991), Stark App. No. CA–8512, unreported, 1991 WL 160850 (applying *Rogers* and finding that successor company could enforce restrictive covenant entered into between former employee and predecessor employer). Thus, to the extent the trial court held that Ohio law generally prohibits the assignment of noncompetition agreements absent specific employee approval, it was in error.

In holding that Drustar's rights under the noncompetition agreement at issue in this case could not be assigned to appellant under Ohio law absent appellee's approval, the trial court found this court's 1943 decision in *Pestel Milk Co. v. Model Dairy Prod. Co.* (1943), 52 N.E.2d 651, 39 Ohio Law Abs. 197, to be particularly persuasive. We find, however, that the trial court misconstrued the holding of *Pestel Milk* and its applicability to this case. In *Pestel Milk*, the employees in question had entered into agreements not to compete for six months after termination of their employment. The employer sold the business and assigned the agreements to the new owner. The employees then continued in the employ of the new owner for the six-month period and thereafter resigned, having never entered into new agreements with the new owner. This court, finding that the employees had observed the terms of their agreement entered into with the original owner, rejected the new employer's effort to extend the restrictive covenant to involve a six-month period after the employees resignation from the new employer. Thus, *Pestel Milk* does not stand for the proposition that rights under a covenant not to compete cannot be assigned absent the consent of the employee but, rather, as noted by the court in *Safier's, supra,* 42

O.O. at 212, 93 N.E.2d at 737, 58 Ohio Law Abs. at 297, the case "furnishes a powerful suggestion that if they [the employees] had not observed the restrictive covenant for six months they would be enjoined."

Likewise, we reject appellee's suggestion that the assignment of Drustar's rights under the agreement at issue here is invalid under the Ohio Supreme Court's analysis in *Rogers, supra,* because Drustar's sales representatives, who continued in the employ of appellant, experienced significant changes in their work duties as a result of the ownership change. In particular, appellant contends that the sales territories, product line, and customer base were materially and significantly altered after the sale of the business to appellant.

As noted above, however, the legal question at issue in *Rogers* was (like that at issue in *Pestel Milk*) whether the covenant not to compete became a part of and continued to be a condition of the employee's employment with the new owner of the business and, thus, was triggered upon the termination of the employment with the new business owner. Here, appellee resigned his employment with Drustar before the asset sale and was never employed by appellant. Therefore, no additional burdens were placed upon appellee as a result of the asset sale or the assignment of the noncompetition agreement. Since appellee could hardly avoid his obligations under the noncompetition agreement had Drustar itself imposed additional burdens on its sales representatives after appellee left, there is no logical reason why such changes by appellant after the sale should affect the obligations of appellee under the agreement. Nothing in *Rogers, supra,* suggests that it does.

Here, appellant seeks to enforce the noncompetition agreement pursuant to its terms for the one-year period commencing from appellee's resignation from Drustar on January 25, 1999. Appellant's ability to do so is specifically approved by the court's analysis in *Safier's, supra,* and is implicitly recognized under this court's decision in *Pestel Milk, supra.*

For the foregoing reasons, we find that the trial court erred in holding that Drustar's rights under the noncompetition agreement were nonassignable as a matter of law. Appellant's single assignment of error is well taken, and the judgment of the Franklin County Court of Common Pleas is reversed and remanded for further proceedings not inconsistent therewith.

*Judgment reversed
and cause remanded.*

BROWN and KLINE, JJ., concur.

ROGER L. KLINE, J., of the Fourth Appellate District, sitting by assignment.