**SOEDER, ET, Plaintiff-Appellees, v SOEDER, ET, Defendant-Appellants.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20698. Decided December 8, 1947.

Maxwell J. Gruber, Cleveland, for plaintiff-appellees.
Roth & Pollack, Cleveland, for defendant-appellants.

## OPINION

By HURD, PJ.

This action in equity, now in this court on appeal on questions of law and fact, originated in the Common Pleas Court of this County wherein the plaintiffs, William Soeder and Edward Soeder, brothers, doing business as Soeder Sons Milk Company, prayed for a permanent injunction against the defendants appellants, John Soeder, another brother, and the Tip Top Dairy Company, a partnership of which the defendant, John Soeder, is a partner, from soliciting the trade and business of plaintiffs appellees. For convenience, the parties will be designated hereinafter as plaintiffs and defendants, as they appeared in the trial court.

The Common Pleas Court found for the plaintiffs on all issues and granted a permanent injunction restraining the defendants from soliciting the trade and business of the plaintiffs and concerns doing business with plaintiffs "which trade and business the plaintiffs had or obtained during the period of time the defendant, John Soeder, was employed in a confidential and fiduciary position." By agreement of the parties, the cause is here submitted upon the original pleadings and the record made in the trial court.

The material facts are that the plaintiffs, William Soeder and Edward Soeder have been operating for a period of over thirty years as a partnership, the Soeder Sons Milk Company, a wholesale general dairy, pasteurizing, processing and distributing business in Cuyahoga County, succeeding to the business of their father which commenced in 1890. The defendant, John Soeder, likewise has been engaged in a wholesale general dairy, pasteurizing, processing and distributing business in Cuyahoga County for a period of approximately thirty years and for twenty-five years up to November, 1941, operated under the name of The Maple Leaf Dairy Company, a corporation, wherein the stock was wholly owned by him and his wife, a third person holding one share as a nominee.

In December, 1941, the creditors of The Maple Leaf Dairy Company filed a petition in bankruptcy in the District Court of the United States for the Northern District of Ohio, Eastern Division, and immediately thereafter The Maple Leaf Dairy Company filed its petition for bankruptcy in said Court. A Trustee was appointed and the Trustee was authorized by the Court in February, 1942, to sell and convey to one Andrew Dolence the dairy equipment, trucks, good will, and other assets of the corporation, subject to all claims thereto and liens thereupon, of the Lorain Street Bank, the Morris Plan Bank and the Sumner Motor Service Company, Inc. The sale was thereafter confirmed by the District Court.

It appears from the record that the assets of the bankrupt were purchased by said Dolence at the instance of and for the benefit of the plaintiffs herein, for the sum of $4000.00, plus an agent's commission of $750.00, making a total of $4750.00 paid by the plaintiffs, and thereafter title to the assets of the bankrupt estate were conveyed to the plaintiffs subject to the liens above set forth.

In November, 1941, some months prior to the sale in bankruptcy, the defendant, John Soeder, entered the employ of the plaintiffs and at that time brought with him a list of the customers of The Maple Leaf Dairy Company which he turned over to the Soeder Sons Milk Company. The result of the entire transaction was that the business of The Maple Leaf Dairy Company was eventually merged into the business of the Soeder Sons Milk Company.

Subsequent to the purchase of the assets from the Trustee in Bankruptcy, the defendant, John Soeder, signed a statement dated April 11, 1942, acknowledging receipt from the Soeder Sons Milk Company of $4750.00 "in cash for all Maple Leaf Dairy Company equipment, trucks, bottles, cases, cans, ma-

chinery, complete with good will." While this statement recites receipt of $4750.00, the fact is that he did not receive this money but that this sum merely represents the amount paid to the Trustee in Bankrutpcy, plus the agent's commission as hereinbefore set forth.

The evidence shows that thereafter, John Soeder worked for the plaintiffs for a period of about four years and ten months. During the first two years his work was of an ordinary character, not involving confidential matters such as taking care of the rationing program of the company and attending to accident cases and other incidental matters. Thereafter he was assigned to other work. He was given and exercised authority to order materials, supervise employees, contact customers, assimilate the records between plaintiffs, their customers and supplier, had access to and was familiar with all the contracts, books and records of the plaintiffs, assisted in building up and merging the good will of The Maple Leaf Dairy Company with that of the plaintiffs, and in doing so he became familiar with the capacity of the plant, the employees, the equipment, the problems and all phases of the business of the plaintiffs. At times, during the absence of the plaintiffs, he was in full charge of the business and was directly in charge of and responsible for the operations of the company.

On August 31, 1946, he left the employ of the plaintiffs and entered into partnership with one Rossi, under the firm name of the Tip Top Dairy Company, the defendant herein. Thereafter it appears that he and Rossi began to solicit the customers of the Soeder Sons Milk Company for the benefit of the Tip Top Dairy Company, whereupon this action was brought for injunction and equitable relief against said defendants.

There is evidence in the record concerning the sale of certain personal property by the defendants to the plaintiffs and concerning the purchase and extinguishment of the liens subject to which the sale was made by the Trustee in Bankruptcy. However, inasmuch as we consider this evidence immaterial and irrelevant, we deem it unnecessary to advert to the same in detail.

We do not find from the evidence that there was any express contract by the terms of which the individual defendant, Soeder, was restricted from entering into the milk business or from soliciting the customers of plaintiffs. We do, however, find that the defendant, Soeder, while never a member of the partnership, did after the first two years of his employment become sufficiently conversant with the business of the plaintiffs to enable him to acquire information relative

thereto of a confidential nature. On the other hand, we find that the list of customers of The Maple Leaf Dairy Company (shown on Defendant's Exhibit 1, being 66 in number) were not acquired in a confidential or fiduciary relationship, but on the contrary were brought to plaintiffs by the defendant when he entered their employ.

The law of this State is well settled that in the absence of an express contract not to do so, an employee upon engaging in a competitive business, may solicit the trade or business of his former employer and will not be enjoined where there is no disclosure or use of trade secrets secured in the course of his employment. See **Curry v Marquard, 133 Oh St 77.**[1]

In the same case the Supreme Court emphasized the principle of law that disclosure of secrets secured by an employee in the course of confidential employment such as lists of customers, will be restrained by the injunctive process.[2]

We think therefore, that defendant, Soeder, while free to engage in a competitive business, may not solicit for himself or the Tip Top Dairy Company those customers of plaintiffs of which he learned during the time he was employed in a confidential capacity.

This leaves for consideration the question of whether or not he may solicit the former customers of The Maple Leaf Dairy Company the list of which he brought to the plaintiffs at the time of his employment by them in November, 1941. In respect of these customers he was not bound by contract nor was knowledge of them acquired by him in a confidential capacity. But it is urged by plaintiffs that solicitation of these customers is barred because of their purchase of the good will of the old business.

---

1. Curry v Marquard, supra. (syllabus):

"In the absence of an express contract not to engage in a competitive pursuit, an employee upon taking a new employment in a competing business, may solicit for his employer the trade or business of his former customers and will not be enjoined from so doing at the instance of his former employer where there is no disclosure or use of trade secrets or confidential information relative to the trade or business in which he had been engaged and which he had secured in the course of his former employment.

2. Curry v Marquard, supra (at page 79):

"The authorities are quite uniform that disclosures of trade secrets by an employee secured by him in the course of confidential employment will be restrained by the process of injunction and in numerous instances attempts to use for himself or for a new employer information relative to the trade or business in which he had been engaged, such as lists of customers regarded as confidential have been restrained."

There is a clear distinction between voluntary and involuntary transfers of good will. Where there is a voluntary transfer of good will, the vendor having a right to conduct a competing business will not be permitted to destroy the value of the good will by direct solicitation of the old customers.

On the other hand, where there is an involuntary transfer of good will, as by sale through insolvency, bankruptcy or foreclosure proceedings, the rule is otherwise, and the vendor may even directly solicit the customers of the old business.[3] This principle of law is well stated in 82 A. L. R. 1038, as follows:

"In the case of an involuntary sale of a business, together with its good will, the former owner is not prevented from again conducting a similar business and he may directly solicit the customers of the old establishment.[4]" (See Note 4 below for supporting authorities.)

The one case there cited, contra,[5] is clearly distinguished on the facts. In that case the parties resumed business under the old name and engaged in other unfair practices and an injunction was properly issued. In the instant case, however, the parties have not assumed the old or a similar name and have not engaged in other unfair trade practices.

Considering now the statement signed by the defendant, Soeder, on April 17, 1942, acknowledging the receipt of $4750.00, it is our opinion that because in fact this sum was not paid to the defendant Soeder, it must fail as an agreement for want of consideration. If any binding effect can be claimed for this particular document, the undisputed evidence discloses that the plaintiffs had a period of over four years from the date of their purchase of the assets from the Trustee in Bankruptcy, to acquire, solidify and attach to themselves the good will of The Maple Leaf Dairy Company.

---

3. See: 24 American Jurisprudence 817- 818, Sections 23 and 24 under heading of 'Good Will'.

4. See: James Van Dyk Co. v F. W. Reilly Co. (1911) 73 Misc. 87, 130 N. Y. Supp. 755;

Re: Brown (1926) 242 N. Y. L; 44 A. L. R. 510, 150 N. E. 581;

Buffalo Oyster Co. v Nenno, (1928) 132 Misc. 213, 229 N. Y. Supp. 210;

Green & Sons v Morris (1914) 220 Mass. 42; 107 N. E. 455 supra, (Subd. III);

Von Bremen v MacMonnies (1910) 200 N. Y. 41; 32 L. R. A. (n. s.) 293;

93 N. E. 186; 21 Ann. Cas. 423. But see S. F. Myers Co. v Tuttle (1910) (C. C.) 183 Fed. 235.

5. See: S. F. Myers Co. v Tuttle, 188 Fed. 532 (1911) (C. C.).

It has been held in Ohio that while the seller of a business, including good will, cannot impair the good will by soliciting directly the old customers before the buyer has had time to make them his own, nevertheless, "three years must be considered sufficient time to attach good will to.itself and to make it its own" * * * and that "to hold otherwise would be unreasonable, in restraint of trade and contrary to public policy."[6] With this principle of law we are in complete accord.

Therefore, upon a consideration of the facts and circumstances as disclosed by the entire record, we conclude that the defendants, should not be enjoined from soliciting the customers of The Maple Leaf Dairy Company, the assets and good will of which were acquired by plaintiffs through the Trustee in Bankrutcy, the list of which was brought to the plaintiffs by the defendant, Soeder, at the time he entered their employ.

We are in full accord with the decision of the trial court that the defendants should be restrained from soliciting the other customers of the plaintiffs, which trade and business the plaintiffs had or obtained during the period of time the defendant Soeder was employed in a confidential relationship.

A finding and decree for plaintiffs and for the defendants will be entered accordingly. Order See Journal. Exceptions.

MORGAN and SKEEL, JJ, concur.

---

6. See: Suburban Ice Mfg & Cold Storage Co. v Mulvihill, decided March 29, 1926, 21 Oh Ap 438. (Motion to certify overruled June 15, 1946).