**HANCE et, Plaintiffs, v. PEACOCK, Defendant.**

Common Pleas Court, Shelby County.

No. 15462.   Decided April 16, 1960.

Goslee & Dunlap, Bellefontaine, for plaintiff.

Marshall & Wills, Sidney, for defendant.

(DULL, J, of Mercer County, sitting by assignment in Shelby County.)

## OPINION

By DULL, J.

The plaintiff in this action is engaged in the business of selling bottled gas and the services necessary thereto. Further, the business of the plaintiff is in the process of changing ownership. The defendant is a former employee of the plaintiff who is now engaged in the same business of selling bottled gas and services, but he is now employed by a rival company of the plaintiff.

The plaintiff over a period of 10 years or more has developed a list of customers all of whom have signed an agreement with plaintiff which has a termination provision to the effect "(a) by consumer at any time by giving company (30) days written notice." Many of these customers —but not all—were secured for the plaintiff by the defendant while he was in plaintiff's employ. In fact, the defendant's name appears

on some of the agreements as the representative of the plaintiff. Perhaps, some of these customers were friends of the defendant when he started to work for the plaintiff. More certain, that many of these customers became friends of the defendant during the course of his employment with the plaintiff. Evidently, any contract of employment which defendant had with the plaintiff contained no restrictive covenants which might have forbidden him to work for a business competitor of the plaintiff after he left the plaintiff's employ. The defendant has continued to sell the bottled gas and services of his new employer to these customers and former customers of the plaintiff.

The plaintiff seeks injunctive relief against the defendant. On January 26, 1960, the original injunction was modified by agreement of counsel with the approval of the court as follows:

"This matter coming before the Court on the Motion of the defendant to dissolve the restraining order heretofore issued herein, the Court finds that the parties have agreed upon a modification of said order as follows:

1. The defendant is permitted to engage generally in the selling of bottled gas in his business known as "Peacock Blue Flame Gas" in Shelby County, Ohio.

2. The Defendant is restrained from soliciting any customers of "Hance Bottled Gas," the Plaintiff, which he had personally secured as a customer of Hance Bottled Gas, Plaintiff, or has induced to sign a contract for Hance Bottled Gas. Except, however, if any of said customers come to him voluntarily and have terminated their contracts with Hance Bottled Gas, then he is free to serve them, and deal and negotiate with them in his business.

3. Defendant is permitted to solicit in the general operation of his business all other people in Shelby County, Ohio, including any other customers of Hance Bottled Gas or the Plaintiff; however, he shall not discredit the Plaintiff's business in any way and shall not induce, either directly or indirectly, any of said customers to breach or terminate their contracts with Plaintiff, Hance Bottled Gas.

4. Defendant shall be permitted to continue to service the customers that he had as of January 20, 1960, who desire his services and business, and who have terminated their contract with Plaintiff or Hance Bottled Gas.

5. Defendant shall be permitted to advertise his business and services.

The above modification of the restraining order appears to the Court to be fair and reasonable and the Court hereby approves the same.

The Court further orders the return of the bond posted herein to the proper party.

This matter is continued until further orders by the Court."

On March 28, 1960, the defendant was cited for contempt of the orders of the Court issued on January 26, 1960. A hearing was held and the matter is now before the Court for ruling on the charge of contempt.

The leading case in a situation of this kind is **Curry v. Marquart** (1937), **133 Oh St 77.** Its syllabus states: "In the absence of an express contract not to engage in a competitive pursuit, an employee, upon

taking a new employment in a competing business, may solicit for his employer the trade or business of his former customers and will not be enjoined from so doing at the instance of his former employer where there is no disclosure or use of trade secrets or confidential information relative to the trade or business in which he had been engaged and which he had secured in the course of his former employment." However, the court in its opinion at page 79 further states: "The authorities are quite uniform that disclosures of trade secrets by an employee secured by him in the course of confidential employment will be restrained by the process of injunction, and in numerous instances attempts to use for himself or for a new employer information relative to the trade or business in which he had been engaged, such as lists of customers regarded as confidential, have been restrained."

Thus, it seems, that lists of customers are regarded as trade secrets or confidential information.

The same view is taken in the syllabus of **Soeder v. Soeder (1947), 50 Abs 84,** which states: "1. In the absence of an express contract not to do so, an employee, in engaging in a competitive business, may solicit the trade or business of his former employer and will not be enjoined where there is no disclosure or use of trade secrets secured in the course of his employment. 2. This disclosure of secrets secured by an employee in the course of confidential employment, such as lists of customers, will be restrained by injunctive process."

Further, wherein a principal and agent were involved in **Patterson v. Pollock (1948), 84 Oh Ap 489,** the syllabus states: "1. The duty of an agent not to use on his own account or the account of others, matters, such as trade secrets, written lists of names and the like, confided to him by his principal, continues after the termination of the agency."

A study of the cases wherein injunctive relief is sought to restrain a defendant from inducing a breach of contract discloses somewhat of a conflict in rulings.

The syllabus of **Horth v. American Aggregates Corporation (1940), 31 Abs 331, 20 O. O. 76** states: "1. It is not a malicious inducement of a breach of contract for a person to enter into an agreement with another person with knowledge that such other person has a contract with a third person covering the same subject-matter and that both contracts can not be performed." In this case, however, damages and not injunctive relief was sought.

Again, the syllabus of **Pestel Milk Company v. Model Dairy Products Company (1943), 39 Abs 197** states: "4. It is not a malicious inducement of a breach of contract for a person to enter into an agreement with another person with knowledge that such person has a contract with a third person covering the same subject matter and that both contracts cannot be performed. 5. It is not a malicious inducement of a breach of contract for a dairy company to enter into an agreement with route men employed by and who had a contract with another company, covering the same milk routes, with knowledge that both contracts could not be performed." The factual situation in this case is different from the present one inasmuch as an employment contract

with a restrictive covenant is involved. Further, the court on **Application For Rehearing** (1943), **39 Abs 210**, distinguishes not only Curry v. Marquart, supra, but also **Briggs v. Butler** (1942), **140 Oh St 499**, and **French Brothers Bauer Company v. Townsend Brothers Milk Company** (1925), **21 Oh Ap 177**.

Still again, the syllabus of **Akron Milk Producers, Inc. v. Lawson Milk Company** (1958), **77 Abs 275** states: "1. An attempt to induce or cause a breach of contract establishes prima facie evidence of legal malice and this must be overcome by evidence proving justification and where there is no justification such attempts should be enjoined. 2. Where one has genuine business purposes in open competitive fields, that one has the right to compete for the products of another or for the business of the consumer and it is therefore not unlawful for one, by fair and lawful persuasion, to interfere with contracts of another where made with honest intent to improve one's own business." This is a Common Pleas Court decision and the factual situation is different from the present one.

Looking at the other side of the coin: the syllabus of French Brothers Bauer Company v. Townsend Brothers Milk Company, supra, states: "Where dairy business, conducted under owners' name, was sold to plaintiff corporation, which thereafter included seller's name "Townsend" in its corporate name, and subsequently defendants, who were sons of seller, left plaintiff's employ and engaged in competing business under name "Townsend Bros. Milk Company," and with aid of several former drivers and other employes of plaintiff solicited and secured many of plaintiff's customers, held that plaintiff, which had spent large sums in advertising name "Townsend" to designate its products, was entitled to injunction restraining defendants from employing any of plaintiff's former employees who were formerly or at present employed by plaintiff to work over plaintiff's trade routes or from employing employees to solicit plaintiff's customers served by them while employed by plaintiff, notwithstanding absence of use of written list of customers." And on page 180 of the opinion the Court states: "If a written list of the route customers was kept by plaintiff company, and the employes, or the defendant company, took the list and used the same, it is a well-recognized rule that injunctive relief would be proper. While there is no written list of such customers, the former employes knew and had in mind every such customer, and the reason for the rule is just as pertinent under these circumstances as though there had been a written list. There is ample authority for holding that such action should be enjoined." This case, however, is one where injunctive relief was sought on the grounds of unfair competition.

Also, the syllabus of **Reichman v. Drake** (1951), **89 Oh Ap 222**, states: "3. One who, without privilege to do so, induces or otherwise purposely causes a person not to perform a contract or enter into or continue a business relation with another is liable to such other for the harm caused thereby." This case involved a lease and damages—not injunctive relief—was sought for inducing a breach of contract.

The testimony of four of the witnesses called by the plaintiff re-

vealed that they were all former customers of the plaintiff, had bought bottled gas from the defendant after the restraining order was issued on January 26, 1960, and none had given written notice to the plaintiff of the termination of their agreements with the plaintiff. Several, however, had given the plaintiff verbal notice of termination. One witness testified he had not read his agreement with the plaintiff. Another testified he had read his only recently. None denied their signatures on their agreements with the plaintiff. There was no testimony that the defendant had done or said anything to discredit the plaintiff and all the witnesses expressed a desire to buy bottled gas and service from the defendant. There was testimony from one witness of a local custom or habit to the effect that customers terminated agreements to buy bottled gas and services of some company or companies without giving written notice to the company: verbal notice to the company was all that was necessary.

Weighing all the testimony, considering all the practical difficulties involved in such a situation, and to prevent the erosion of the usefulness of the written contract in ordinary business, the Court finds the defendant in partial violation of paragraphs 2, 3 and 4 of the restraining order issued on January 26, 1960, and therefore guilty of contempt. The defendant, however, shall be permitted to purge himself of such contempt by obeying and complying with the following orders:

1. The Defendant is permitted to engage generally in the selling of bottled gas in his business known as "Peacock Blue Flame Gas" in Shelby County, Ohio.

2. The defendant is restrained from soliciting business from any customers or former customers of the plaintiff, whom he knows to be such through his employment by the plaintiff, who have not terminated their agreements with the plaintiff according to its terms; provided, however, the defendant shall be permitted to sell his products and services to such customers or former customers of the plaintiff who have given the 30 days written notice of termination to the plaintiff according to the terms of their agreements with the plaintiff, **and** (1) who have been released from their agreements by the plaintiff either verbally or in writing, **or** (2) such customers or former customers of the plaintiff to whom the plaintiff fails to offer its products and services as needed by such customers and former customers in the regular conduct of plaintiff's sales and services in the 30 days following the giving of notice.

3. Defendant shall be permitted to advertise his business and services.

In the spirit of the doctrine of he who seeks equity must do equity and inasmuch as the business of the plaintiff is in the process of changing ownership, the plaintiff shall cause a letter to be written and delivered to all its customers or former customers informing them of such contemplated change of ownership and further calling their attention—in simple and courteous words—to the terms of their agreements with the plaintiff in the event such customers or former customers desire to continue or discontinue their business relationship with the

plaintiff. This letter shall be written and delivered as soon as possible after the date of the filing of this entry. Further, a copy of this letter shall be filed with the Court.

The orders contained herein shall supersede and be controlling over all former orders issued by the Court.