COMMONWEALTH SANITATION COMPANY OF CLEVELAND, INC., PLAINTIFF-APPELLEE, *v.* COMMONWEALTH PEST CONTROL COMPANY ET, DEFENDANTS-APPELLANTS.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 25717. Decided December 14, 1961.

*Messrs. Hahn, Loeser, Keough, Freedheim & Dean,* for plaintiff-appellee.

*Messrs. Hertz & Kates,* for defendants-appellants.

(HUNSICKER and DOYLE, JJ., of the Ninth District, and GUERNSEY, J., of the Third District, sitting by assignment in the Eighth District.)

HUNSICKER, P. J. This is an appeal on questions of law and fact from a judgment granting an injunction in favor of Commonwealth Sanitation Company of Cleveland, Inc., and against Commonwealth Pest Control Company, Commonwealth Exterminating Company, Bernard D. Crosby and Murray M. Kline.

In this opinion the appellee will be designated "Commonwealth," and the appellants will be called "Crosby and Kline."

In 1948, Bernard D. Crosby and Murray M. Kline came to Cleveland, Ohio, to manage Commonwealth. They worked for Commonwealth until February 28, 1961. On March 1, 1961, Crosby and Kline began the operation of a competing business known as "Economy Exterminators Company." Crosby and Kline also took the necessary preliminary steps to incorporate Commonwealth Pest Control Company and Commonwealth Exterminating Company, although such companies have never done any business in the pest control field.

Crosby and Kline, by means of some personal solicitation of former customers of Commonwealth, advertisement in the yellow pages of the telephone directory, and direct mail advertising, secured a number of customers who had done business with Commonwealth.

Commonwealth then brought an action in the Common Pleas Court of Cuyahoga County, Ohio, to enjoin Crosby and Kline from operating a competing business in the general Cleveland area, saying that, although there was no written contract whereby Crosby and Kline agreed not to engage in a competing business if their services were terminated, nevertheless, Crosby and Kline were employed in a confidential relationship by Commonwealth, and hence they acquired their knowledge of customers only from such employment. Commonwealth then asked for an injunction against Crosby and Kline personally, and an injunction against the use by them of the word "Commonwealth" in the two companies they had incorporated, but which companies had not engaged in any operations.

Crosby and Kline denied they were engaged in violating any confidences obtained while employed with Commonwealth.

After an extended hearing, the trial court permanently enjoined the appellants herein "from using the name 'Commonwealth' as a corporate name, trade name or otherwise, in the pest control extermination business;" and enjoined until March 1, 1964, Bernard D. Crosby and Murray M. Kline "from directly or indirectly soliciting pest control extermination services to any and all persons, firms or corporations who on or prior to February 28, 1961, were customers of the plaintiff, provided:

"(a) With regard to any personal friend of defendants Crosby and Kline who became such before becoming a customer of plaintiff and who on February 28, 1961, was a party to an uncancelled service agreement with the plaintiff, the aforesaid injunction shall be effective until one year following the end of the annual term of any such service agreement occurring after February 28, 1961;

"(b) That defendants Crosby and Kline shall not be enjoined or prohibited from soliciting or servicing any personal friend who became such before becoming a customer of the plaintiff and who on and prior to February 28, 1961, was a customer of the plaintiff but who, on said date, were not subject to unexpired service agreements with the plaintiff."

It is from that judgment that an appeal is lodged in this court.

The pest control business is a specilized trade which requires supervision by governmental agencies. Those who participate in this work require certain skills which are evidenced by a license from the municipality in which they operate. It is apparent why, in such work, a skill, as well as knowledge of poisons and their use, is needed, since most of the customers of any pest control company are engaged in the operation of businesses either directly or indirectly in the sale of foods for human consumption. Some few customers operate apartments, and a few private homes also have use of the facilities of the pest exterminators.

The business is conducted as quietly and unobtrusively as possible, for the very good reason that no one wishes to have

his neighbor or the general public know that the customer of the pest control company has need of such intimate services. No one wishes to openly admit that he has bugs, insects, or rodents, either in his food business or in his home. It is for this reason that service calls are made, at a place where the service is needed, in unmarked motor vehicles; and business comes, not through personal contact, but largely through telephone calls to the exterminating company. Extensive use is made of the telephone directory by advertisement in the yellow pages of such book, and the frequent use of other names and other telephone numbers for the identical pest control enterprise.

There is thus built up, as with Commonwealth, a list of customers, known of course to the operators of the business and their employees, but not known to the general public. It is these customers of Commonwealth, the names of whom were remembered by Crosby and Kline, whom the former employees solicited, either because of the friendship made during their employment, or because the business was valuable.

The rule, in cases such as the instant action, has been stated by the Eighth District Court of Appeals in *Soeder et al., etc.* v. *Soeder, etc., et al.*, 82 Ohio App., 71, which conclusion there reached was in full accord with the case of *Curry* v. *Marquart et al.*, 133 Ohio St., 77, wherein the court said:

"In the absence of an express contract not to engage in a competitive pursuit, an employee, upon taking a new employment in a competing business, may solicit for his employer the trade or business of his former customers and will not be enjoined from so doing at the instance of his former employer where there is no disclosure or use of trade secrets or confidential information relative to the trade or business in which he had been engaged and which he had secured in the course of his former employment."

The problem, then, in the instant case, is whether the knowledge and information which Crosby and Kline obtained as a result of their employment by Commonwealth is in fact of a confidential character. The only alleged trade secret they may have obtained from Commonwealth, which is shown by the testimony before us, is a knowledge as to who were the customers

of Commonwealth. The list of customers, so far as the evidence before us discloses, was not copied and carried away from Commonwealth. The evidence herein is that the names of such of the customers of Commonwealth as were contacted by Crosby and Kline were as a result of the claimed good memory of these two former employees. They also contacted some of their friends and acquaintances, former customers of Commonwealth, whose friendship they gained as a result of their long association with Commonwealth, or because of similar church and lodge membership.

The word "confidential," as defined in part in Webster's Third New International Dictionary, Unabridged, is:

"1. communicated, conveyed, acted on, or practiced in confidence: known only to a limited few; not publicly disseminated * * * "

In the respect in which confidential is defined above, all business is conducted in such a way that the customers are known only to a limited few. No sensible businessman publicly disseminates his customer lists, although in many businesses the other companies' Customers are known to competing businessmen.

In the business of pest control, the most frequent users of the services are hotels, restaurants, bars, bakeries, grocers, and apartment house owners. These users are the most profitable since they constitute repeat business. The house owner seldom needs more than one service call. In the sense, then, of being confidential information, gained only through long association in the business, Crosby and Kline knew what all men operating in this line of business must know, which is, that profitable operation comes from the sources named above. All of such business places are known either through a city directory or telephone directory. In that sense, the possible users of service are known not to a few but to all who would seek them out.

There is nothing, so far as the evidence shows herein, unique or secret about the process of getting rid of pests. There is no secret compound used or method adopted by Commonwealth different from that practiced by all other similar businesses.

In our search of cases bearing on the question herein, we

find two lines of authority. One is shown by the case of *Alex Foods, Inc.*, v. *Metcalfe et al.*, 290 P. (2d), 646, a California case which indicates that customers of a former employee may not be solicited, even in the absence of a restrictive covenant. The other line of authority, to the effect that, in the absence of a restrictive covenant or fraud, customers of a former employer, the names of whom are in the memory of the former employee, may be solicited, is found in *Abalene Exterminating Co. of N. J., Inc., et al.*, v. *Elges et al.*, 43 A. (2d), 165, 137 N. J. Eq., 1; *Spring Steels, Inc.*, v. *Molloy et al.*, 162 A. (2d), 370 (Pa.).

There is thus in these cases a direct conflict of authority. The former line of cases says that a customer list built by an employer over a period of years is the employer's property, and its use by a former employee for his own advantage will be enjoined. The other cases under such facts deny an injunction.

An interesting trial court case which denied an injunction similar to that requested in the present action, is the case of *Commonwealth Sanitation Co. of New York* v. *Fox*, 107 N. Y. S., 935. From the testimony in the case before us we conclude there is, or was, a connection between the Commonwealth companies.

In 2 Restatement of the Law of Agency, 2d, Sec. 396, it is stated:

"Unless otherwise agreed, after the termination of the agency, the agent:

"(a) has no duty not to compete with the principal;

"(b) has a duty to the principal not to use or to disclose to third persons, on his own account or on account of others, in competition with the principal or to his injury, trade secrets, written lists of names, or other similar confidential matters given to him only for the principal's use or acquired by the agent in violation of duty. The agent is entitled to use general information concerning the method of business of the principal and the names of the customers retained in his memory, if not acquired in violation of his duty as agent;

"(c) has a duty to account for profits made by the sale or use of trade secrets and other confidential information, whether or not in competition with the principal;

"(d) has a duty to the principal not to take advantage of a still subsisting confidential relation created during the prior agency relation."

We therefore determine that the defendants, Commonwealth Pest Control Company, Commonwealth Exterminating Company, Bernard D. Crosby and Murray D. Kline, should be jointly and severally permanently enjoined and prohibited from using the name "Commonwealth" as a corporate name, trade name or otherwise, in the pest control extermination business. In all other respects, the injunction prayed for is denied.

The parties will prepare and submit a proper journal entry. Costs to be divided equally between the parties.

DOYLE and GUERNSEY, JJ., concur.