ALBERT B. CORD COMPANY, INC., AN OHIO CORPORATION, PLAINTIFF, *v.* S & P MANAGEMENT SERVICES, INC., AN OHIO CORPORATION, ET, DEFENDANTS.

Common Pleas Court, Hamilton County.

No. A-184627.   Decided March 25, 1963.

*Messrs. Kyte, Conlan, Wulsin & Vogeler*, for plaintiff.
*Mr. Nicholas Bauer*, for defendant, S & P Management Services, Inc.

LEIS, J. The plaintiff, Albert B. Cord Company, Inc., is an Ohio corporation engaged in management-consulting. Mr. Albert B. Cord is the president of said corporation.

The defendant, S & P Management Service, Inc., is, likewise, a management-consulting business and was organized some time after May 30, 1961. The individual defendants, Mr. Anthony M. Schummer and Mr. J. Paul Pickering, S & P's principal shareholders, were employed by the plaintiff prior to May 30, 1961. Mr. Schummer, an engineer, became a member of plaintiff's staff as a Staff Engineer at or about June 1948. In January 1950, he was promoted to the supervisory staff as Chief Engineer. In this capacity Mr. Schummer was recognized as Assistant General Manager with full power and authority to act in the event anything happened to the General Manager (Mr. Albert Cord), and he had full force and power to perform anything that, in his discretion, he saw fit. Mr. J. Paul Pickering was employed by the plaintiff as its Sales Manager prior to his resignation.

Management-consulting firms offer assistance to business concerns in solving various problems in such areas as labor relations, shop operations, wage plans, production, administration, sales promotion and related problems peculiar to modern business. Service is rendered upon a fee basis. One of the chief assets of a management-consulting firm is its staff of well-trained engineers, accountants, administrators and salesmen; men who are qualified and trained both technically and through years of experience in all the phases of business activity in production control, sales and sales promotion, administration, accounting and cost control, statistics, engineering, etc. These assets are "human assets" and, as experts, their minds and mentality, and their ability to analyze the problems presented to them, apply their technical knowledge, experience and imagination and recommend a workable remedy to cure the business ailment are of intangible value to the management-consulting firm. Another asset of relative and equal importance to the management-consulting company is a knowledge of,

and access to, companies which are likely to need its services.

In the case at bar Mr. Pickering was the person most relied upon to secure the clientele. He was continually "on the road" making business calls in the midwest—Ohio, Indiana, Michigan, Illinois, Missouri, Pennsylvania and West Virginia. Whenever he made a call he submitted a report to the office for filing in the customer's file (if the call merited such a file). These reports were variously entitled, per the exhibits before the Court as "Survey Authorization," "Sales Report," "Survey Report," "Client Reactivation Sales Report," "Memorandum." The contents of the reports included the name of the person or persons contacted, a summarization of any discussions with the prospective client, including observations of the manner in which he (the salesman) was received, the problems confronting the prospect, if any; information concerning employees, financial data and statistics, affiliation with other companies, contemplated plans of merger or sale, volume of business activity, D & B credit rating of the client or prospect, and many other items and facts pertinent and helpful to the plaintiff, for the present and for the future, in ascertaining whether or not the prospect is in need, or will be in need of service and if repeat calls should be made. All this data and these comprehensive reports were accumulated in the plaintiff's confidential file with the hope that at some future time it would or will be available in securing an engagement for the plaintiff. Much time, effort and money was spent by the plaintiff through its sales representatives, under the leadership of Mr. Pickering.

The plaintiff's plan followed a definite pattern, namely:
1. The first sales call, and
2. Follow-up calls (if deemed advantageous), leading to
3. An initial Survey, followed up by
4. Contract to perform service to cure the "business ill."

A natural by-product of these contacts was a building of confidence, a relationship between the plaintiff and its personnel and a healthy atmosphere for a successful tenure if a contract was forthcoming.

This Court recognizes the unique character of this type of business as compared to the type of business which offers a commodity or product, or a common service. The Court also

recognizes the fact that repeat business can result from a successful initial engagement. Another element of this business that entered into this Court's consideration is the fact that Cord Company personnel had to work closely with their client's management and personnel. Such close contact can result in relationships of confidence and trust in the personnel of the plaintiff. For this reason the plaintiff, in its contracts, included the following statement:

"In order to maintain a professional atmosphere it is our policy to consider your personnel ineligible for employment with our organization, and we require your commitment to similar conditions regarding the employment or engagement of our personnel by your organization."

All of these factors emphasize the unique character of the plaintiff's business service and of its intangible value, a value which cannot be measured accounting-wise in money, but which is a valuable asset to the corporation in the nature of good will.

The defendants, Mr. Schummer and Mr. Pickering, were the top men in the plaintiff company. The evidence shows that while other employees had written contracts of employment none were required of Mr. Schummer and Mr. Pickering. Evidence was presented to show that Mr. Cord and the defendants worked closely together and freely interchanged information at all times and, as a result of membership in this "inner circle" the defendants had unlimited access to confidential information contained in the locked files of the Cord Company. The defendants had keys to all the locked confidential files except two drawers which contained private papers of Mr. Cord.

This case is categorized under the topic in law entitled "Trade Secrets." The Restatement of Torts, Section 757, comment (b) (1939) defines a "Trade Secret" as follows:

"A trade secret may consist of any formula pattern, device, or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device, or a list of customers * * *."

A trade secret, therefore, is almost anything and every-

thing useful or advantageous in business activity that is not generally known or easily or immediately ascertainable to members of the trade. (Trade Secrets, 23 O. S. L. J., 4.)

The plaintiff in its Second Amended Petition alleges that the defendants—

"have solicited on behalf of S & P Management Services, Inc., the following clients or prospective clients of plaintiff, among others, with whom said individual defendants had dealt on behalf of plaintiff during the last three years of their employment by plaintiff and with respect to whom defendants possessed information secured in the course of their confidential employment by plaintiff and regarded as confidential";
the plaintiff then lists twenty-six company names. Included in the list is the Frick-Gallagher Mfg. Co., Wellston, Ohio, a client of the plaintiff and with whom the plaintiff had been negotiating additional service when defendants were plaintiff's employees, which company plaintiff alleges the defendants induced to retain defendant S & P Management Service, Inc. to perform management-counselling service on the basis of information available to Mr. Schummer and Mr. Pickering as a result of their confidential employment by plaintiff.

The Supreme Court of Ohio stated in *Curry* v. *Marquart*, 133 Ohio St., 77, 10 Ohio Opinions, 93 (1937):

"The authorities are quite uniform that disclosure of trade secrets by an employee, secured by him in the course of confidential employment, will be restrained by the process of injunction, and in numerous instances attempts to use for himself or for a new employer information relative to the trade or business in which he has been engaged, such as lists of customers regarded as confidential, have been restrained."

In the case of *Soeder* v. *Soeder*, 77 N. E. (2d), 474, 82 Ohio App., 71; 37 Ohio Opinions, 387; 50 Ohio Law Abs., 84 (1947), the Court held:

"Disclosure of secrets secured by an employee in the course of confidential employment, such as lists of customers, will be restrained by injunctive process."

(See also *White Baking Co.* v. *Snell*, 28 O. N. P. [N. S.], 172 [1930])

In the 1960 case of *Hance* v. *Peacock*, 169 N. E. (2d), 564,

544

13 Ohio Opinions (2d), 316; 84 Ohio Law Abs., 535, the Court held:

"Lists of customers obtained by defendant, while in employ of plaintiff's bottle gas business was confidential information and its use by defendant after defendant terminated his employment with plaintiff and began his own business could be enjoined as unauthorized use of a trade secret."

A court of appeals of California case is very much in point to the mater now before this Court, namely, *Alex Food, Inc.* v. *Metcalfe*, 290 P. (2d), 646, Cal. App. (1955).

"Independent of an express contract, equity will enjoin the disclosure of trade secrets which a former employee learned in the course of his employment. The fact that a defendant was employed by plaintiff for years, during which he learned the names, address and requirements of plaintiff's customers justifies injunctive relief where the defendant undertook to use such information in unfair competition to the detriment of plaintiff. Such knowledge is part of the good will of the business and is a trade secret. A list of customers is a trade secret if there is confidential information as to such customer. To act upon it is an improper use of confidential information and amounts to unfair competition."

This Court concludes that the information available to the defendants Mr. Schummer and Mr. Pickering was confidential information and was the property of the plaintiff, secured and paid for by the plaintiff with the aid and assistance of the defendants while they were employed by the plaintiff in a confidential capacity. The defendants were confidential employees intrusted with information, in the regular course of their employment, of such a nature that it was not necessary that there be a written customer list for an injunction to issue. The defendants are men of high intelligence and this Court concludes that their memories are as good as any written list. The information about the clients and prospective clients was available to the defendants up until the day of their termination of employment.

This Court grants the temporary injunction per the plaintiff's motion filed November 27, 1961.