This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Plaintiff-Appellant, Rock of Ages Memorials, Inc. (hereinafter "ROAM"), appeals the trial court's decision denying ROAM's motion for preliminary injunctive relief against Defendants-Appellees, Joel Braido and Braido Memorials, LTD. (hereinafter collectively "Braido"), and granting Braido's motion for summary judgment. For the following reasons, we conclude the trial court improperly granted summary judgment but did not abuse its discretion when it denied the motion for a preliminary injunction, and reverse in part the trial court's decision and remand the matter for further proceedings.
On January 6, 1998, Joel Braido entered into a purchase agreement and lease with Terry Myers (hereinafter "Myers") wherein Myers purchased the assets of Joel Braido's memorial sales business known as Park Memorials and leased the premises upon which Park Memorials had been located from Joel Braido. The purchase agreement contained a non-compete clause stating:
 "(13) NON-COMPETE: It is acknowledged by BRAIDO that he has no intent to re-enter the monument sales or service business after closing herein except in a relationship with MYERS in that regard which may or may not develop. In any event, BRAIDO agrees not to be a competitor to MYERS during the term of the Lease or any extension thereof or for a period of five (5) years after MYERS may exercise his option to purchase said PREMISES."
Myers then operated Park Memorial while Joel Braido operated a funeral home. After the sale, Joel Braido occasionally sold memorials for Myers on a commission basis.
On August 2, 1999, Myers sold his business, which included Park Memorials, to ROAM. Joel Braido did not consent to either this sale or an assignment of his agreement with Myers to ROAM. Joel Braido and his two brothers filed Articles of Organization for Braido Memorials, LTD. on October 9, 1999, for the purpose of establishing a memorial sales selling business. ROAM filed a verified complaint against Joel Braido on June 14, 2000, claiming breach of contract and demanding a temporary and permanent injunction which was amended on July 20, 2000, to include Braido Memorials, LTD., as a defendant. On June 23, 2000, ROAM filed a motion for preliminary injunctive relief which Braido responded to on July 25, 2000, along with his own motion for summary judgment. The trial court conducted a hearing on the matter on August 1, 2000, issued it's opinion on November 2, 2000, and, in its November 7, 2000 Judgment Entry, denied ROAM's motion for preliminary injunctive relief and granted Braido's motion for summary judgment.
On appeal, ROAM asserts two assignments of error:
 "The lower court failed to follow governing Ohio law and thereby committed prejudicial error in refusing to grant the preliminary injunction and in ruling that the non-competition clause was not applicable in ROAM's favor nor enforceable by ROAM; specifically,
 A. It improperly held that the purchase agreement and lease were not to be considered together as one document, and
 B. It improperly held that Braido's consent was necessary to the assignment to ROAM, and
 C. It improperly held the noncompete covenant was not reasonable in scope, and
 D. It improperly held that ROAM would not suffer irreparable harm by denial thereof but that Braido would suffer by its granting."
 "The lower court committed prejudicial error in granting summary judgment on the whole case when there were genuine issues of material fact as to the damage claims."
When reviewing a trial court's granting of summary judgment, an appellate court applies the same standard used by the trial court. Parentiv. Goodyear Tire Rubber Co. (1990), 66 Ohio App.3d 826, 829,586 N.E.2d 1121, 1122. This court's review is, therefore, de novo. Doev. Shaffer (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243, 1245. Under Civ.R. 56, summary judgment is only proper when the movant demonstrates that, viewing the evidence most strongly in favor of the non-movant, reasonable minds must conclude no genuine issue as to any material fact remains to be litigated and the moving party is entitled to judgment as a matter of law. Id.
 "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." Dresher v. Burt (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264, 276.
The nonmoving party has the reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293,662 N.E.2d at 274.
ROAM first argues the covenant not to compete is assignable because the purchase agreement which contains the covenant not to compete and the lease are to be read together as one document and the lease provides for assignment. The purchase agreement provides:
 "(2) LEASE OF PREMISES: BRAIDO at closing shall enter into a Lease with MYERS for the premises known as Park Memorials * * * for a period of two (2) years with options to renew for an additional two-year period and an additional one-year period thereafter. * * * At the end of the five (5) years, MYERS shall have the option to extend said Lease for an additional five (5) years * * *."
The lease provides "LESSOR and LESSEE have entered into a Purchase Agreement of even date, the terms of which are to be in pari materia
herewith."
The construction of written contracts is a matter of law. Alexander v.Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, 7 O.O.3d 403,374 N.E.2d 146, paragraph one of the syllabus. Questions of law are reviewed de novo. Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm
(1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684, 686. "The purpose of contract construction is to discover and effectuate the intent of the parties. * * * The intent of the parties is presumed to reside in the language they chose to use in their agreement." Graham v. Drydock CoalCo. (1996), 76 Ohio St.3d 311, 313, 667 N.E.2d 949, 952. In arriving at the meaning of any part of the contract, the instrument must be read in its entirety in order to give effect to the intention of the parties. SeeStocker Sitler, Inc. v. Metzger (1969), 19 Ohio App.2d 135, 142, 48 O.O.2d 254, 257-258, 250 N.E.2d 269, 273. When the terms included in an existing contract are clear and unambiguous, an appellate court cannot create a new contract by finding an intent not expressed in the clear and unambiguous language of the written contract. Hamilton Ins. Serv., Inc.v. Nationwide Ins. Cos. (1999), 86 Ohio St.3d 270, 273, 714 N.E.2d 898,901.
Ohio has long held a court may construe multiple documents together if they concern the same transaction through the doctrine of integration.Edward A. Kemmler Memorial Found. v. 691/733 East Dublin-Granville RoadCo. (1992), 62 Ohio St.3d 494, 499, 584 N.E.2d 695, 698. However, if the terms of a contract are clear, a court cannot resort to the rules of construction. Brown v. Madison (2000), 139 Ohio App.3d 867, 870,745 N.E.2d 1141, 1143. "The doctrine of integration is meant to supply missing meaning in order to effectuate the full intent of the parties."TRINOVA Corp. v. Pilkington Bros., P.L.C. (1994), 70 Ohio St.3d 271,276, 638 N.E.2d 572, 576.
The purchase agreement refers to the lease and defines certain terms within the lease, such as the amount of rent and length of the lease. However, the purchase agreement does not purport to incorporate the lease or be incorporated by the lease. The lease independently states the terms defined in the purchase agreement. It is the lease which refers to the purchase agreement and states it is to be read in pari materia with the purchase agreement. ROAM admits the doctrine of in pari materia may not have been a completely appropriate phrase because it usually refers to statutes, but argues it was intended to show the contracts were to be considered together.
The phrase "in pari materia" means that all aspects of a statutory scheme must be interpreted harmoniously and given complete application.Hughes v. Ohio Bur. of Motor Vehicles (1997), 79 Ohio St.3d 305, 308,681 N.E.2d 430, 433. This rule of construction is invoked "so that inconsistencies in one statute may be resolved by looking at another statute on the same subject." Black's Law Dictionary Seventh Ed. at 794. This is similar to the doctrine of integration found in contract law referred to above. However, as in the doctrine of integration, if there are no inconsistencies, then there is no need to resort to this rule of construction.
A review of the two documents shows that although they do refer to each other and are part of the same transaction, there is no reason to say the terms of one necessarily includes the terms of the other. These contracts are clear on their face and there is no reason to resort to rules of construction to interpret them. Therefore, the clause in the lease providing for assignment does not apply to the purchase agreement, and part A of ROAM's first assignment of error is meritless.
ROAM next argues Myers could assign his contractual rights to ROAM without Braido's assent. Generally, as a portion of the consideration at the time a business is sold, the seller of a business agrees not to compete with the buyer of that business "because such competition would seriously impair the `goodwill' of the business that the buyer purchased and the seller transferred in their bargain." Avki, Inc. v. Avery (June 3, 1993), Montgomery App. No. 13504, unreported at 2. Under Ohio law, a non-compete agreement is one of many contractual rights which may be assigned. See Rogers v. Runfola Assoc., Inc. (1991), 57 Ohio St.3d 5,565 N.E.2d 54. However, courts have disagreed on whether the covenantor and covenantee must both agree to the assignment before it is assignable. Compare Pestel Milk Co. v. Model Dairy Products Co. (App. 1943), 39 Ohio Law Abs. 197 with Safier's, Inc. v. Bialer (C.P. 1950), 58 Ohio Law Abs. 292.
This disagreement is not limited to Ohio. As the Tenth District stated in Artromick International, Inc. v. Koch (2001), 143 Ohio App.3d 805,759 N.E.2d 385, unreported:
 "Some courts, taking a very restrictive view, prohibit assignment as a matter of law or allow assignment only if assignability is specifically approved by the employee, either in the agreement itself or by subsequent agreement with the successor business entity. See Annotation, Enforceability, by Purchaser or Successor of Business, of Covenant Not to Compete Entered Into by Predecessor and Its Employees (1993), 12 A.L.R.5th 847 at Sections 5(a), 6(b) and 9(b). Other courts are more liberal and generally allow assignment of non-competition agreements absent specific language in the agreement prohibiting assignment. See Id. at Sections 9(a) and 14." Id. at 807-808, 759 N.E.2d at 387.
In Ohio, the purpose of contract construction is to give effect to the intent of the parties which is presumed to reside in the language the parties choose to use in their agreement. Graham v. Drydock Coal Co. (1996), 76 Ohio St.3d 311, 313, 667 N.E.2d 949, 952. Therefore, Ohio courts have said:
 "[t]he controlling factor in determining assignability of a covenant not to compete is the intention of the contracting parties. In ascertaining the intention of the parties, the court must determine whether the covenant employs words which indicate that assignment was contemplated and whether assignability is necessary to protect the goodwill of the business being sold." (Citations omitted) Mid-West Presort Mailing Services, Inc. v. Clark (Feb. 10, 1988), Summit App. No. 13215, unreported.
In this particular case, the covenant does not employ words which indicate the parties contemplated the covenant would be assignable. Rather, the covenant states, "BRAIDO agrees not to be a competitor to MYERS." Unlike the lease, which speaks of the lessor and lessee, the purchase agreement, which contains the covenant not to compete, speaks particularly to Braido and Myers in their individual capacities. This particularity indicates the covenant was limited to the two parties to the contract and, therefore, the covenant would not be assignable.
As Mid-West Presort illustrates, when a covenant not to compete is silent as to assignability, courts should look to the purpose of the covenant and determine whether assignment of the covenant would protect that purpose. In most cases, covenants not to compete are meant to protect a business's goodwill. See Avki, supra. As part of the goodwill of a business which he buys, a buyer normally wants the chance to make the customers of that business his own. See Soeder v. Soeder (1947),82 Ohio App. 71, 78, 37 O.O. 387, 390, 77 N.E.2d 474, 477. However, in this case, after he sold Park Memorials to Myers, Braido worked for Myers on a commission basis as an independent contractor. When someone came to him and asked to buy a monument, he sold them the monument.
When examined in the light most favorable to ROAM, these facts illustrate why a genuine issue of material fact exists as to what Braido and Myers' intended to protect when they entered into the covenant not to compete and, thus, whether assignment of the covenant is necessary to maintain that protection. Because of this genuine issue of material fact, it was inappropriate for the trial court to grant summary judgment for Braido. Part B of ROAM's first assignment of error is meritorious.
For the same reasons, Part C of ROAM's first assignment of error has merit. There exists a genuine issue as to the reasonableness of the scope of the covenant not to compete. Lastly, because we conclude the trial court erred by granting summary judgment, and are remanding the case for further proceedings, ROAM's second assignment of error is moot.
Because ROAM's claim survives summary judgment, we must next address whether the trial court properly denied ROAM's motion for a preliminary injunction. Restrictive covenants may be enforced by injunctive relief.Robert W. Clark, M.D., Inc. v. Mt. Carmel Health (1997),124 Ohio App.3d 308, 314-315, 706 N.E.2d 336, 340. The decision whether to grant or deny an injunction rests within the sound discretion of the trial court and will not be reversed absent an abuse of discretion.Perkins v. Quaker City (1956), 165 Ohio St. 120, 59 O.O. 151,133 N.E.2d 595. An abuse of discretion constitutes more than an error of law or judgment; it implies the trial court acted unreasonably, arbitrarily, or unconscionably. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142. A trial court abuses its discretion only when:
 "`the result [is] so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.'" Vanest v. Pillsbury Co. (1997), 124 Ohio App.3d 525, 535, 706 N.E.2d 825, 832 quoting Huffman v. Hair Surgeon, Inc. (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126-127, 482 N.E.2d 1248, 1252.
Part D of ROAM's first assignment of error contends it will suffer irreparable harm absent a preliminary injunction, contrary to the conclusion of the trial court.
 "The purpose of a preliminary injunction is to preserve a status between the parties pending a trial on the merits. Ordinarily, a party requesting a preliminary injunction must show that (1) there is a substantial likelihood that the plaintiff will prevail on the merits, (2) the plaintiff will suffer irreparable injury if the injunction is not granted, (3) no third parties will be unjustifiably harmed if the injunction is granted, and (4) the public interest will be served by the injunction." (Footnotes omitted.) Proctor Gamble Co. v. Stoneham (2000), 140 Ohio App.3d 260, 267, 747 N.E.2d 268, 273.
Each element must be established by clear and convincing evidence.Vanguard Transp. Sys., Inc. v. Edwards Transfer Storage Co., Gen.Commodities Div. (1996), 109 Ohio App.3d 786, 790, 673 N.E.2d 182, 184. Clear and convincing evidence is the measure or degree of proof more than a mere "preponderance of the evidence," but less than "beyond a reasonable doubt" required in criminal cases, and which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. Cincinnati Bar Ass'n v. Massengale
(1991), 58 Ohio St.3d 121, 122, 568 N.E.2d 1222, 1223. A judgment will not be reversed by this court if it is supported by competent, credible evidence establishing all the essential elements of the case. In reGlenn (2000), 139 Ohio App.3d 105, 112, 742 N.E.2d 1210, 1215; State exrel. Shady Acres Nursing Home v. Rhodes (1983), 7 Ohio St.3d 7, 7 OBR 318, 455 N.E.2d 489.
In determining whether to grant injunctive relief, no one factor is dispositive. Cleveland v. Cleveland Elec. Illum. Co. (1996),115 Ohio App.3d 1, 14, 684 N.E.2d 343, 351. The four factors must be balanced with the "flexibility which traditionally has characterized the law of equity." Id.
 "When there is a strong likelihood of success on the merits, preliminary injunctive relief may be justified even though a plaintiff's case of irreparable injury may be weak. In other words, what plaintiff must show as to the degree of irreparable harm varies inversely with what plaintiff demonstrates as to its likelihood of success on the merits." Id.
In the present case, the facts illustrate ROAM may suffer serious injury in its ability to establish goodwill in the community. There is no indication any third party would be injured by the injunction. However, the facts indicate neither that ROAM has a substantial likelihood of prevailing on the merits nor that the public interest would be served by the injunction. It is precisely because these factors may compete that we leave the decision whether to grant a preliminary injunction in the sound discretion of the trial court. The facts of this case do not show the trial court abused its discretion when it denied ROAM's motion for a preliminary injunction. Part D of ROAM's first assignment of error is meritless.
In conclusion, it was error for the trial court to grant Braido summary judgment because an issue of material fact exists as to whether Braido allowed Myers and ROAM to make customers of their own and build their own goodwill. If he did not do so, then the covenant not to compete may be assignable without his consent. However, the trial court did not abuse its discretion when it denied ROAM's motion for a preliminary injunction. For the foregoing reasons, ROAM's assignments of error are meritorious in part, the decision of the trial court is affirmed in part and reversed in part, and this cause is remanded for further proceedings in accordance with this opinion.
Vukovich, P.J., and Waite, J., concurs.